THE STATE *vs.* WILLIAM GALLIVAN.

Second Judicial District, Norwich, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Evidence in corroboration of the testimony of an accomplice is not necessarily to be confined to points directly connecting the accused with the crime.

Upon a trial for murder in the first degree an accomplice testified that he and the accused committed murder in robbing a man, and took a large number of bank bills from him, one of which, a $20 bill, the witness afterward changed at a certain store, and that the accused took other bills to hide in his father's cellar. *Held* that in corroboration it might be shown that the murdered man had a number of $20 bills in his possession a few weeks before his death, that said accomplice changed a $20 bill as he had testified, and that $460 in bills was found hidden in said cellar.

The jury should consider the evidence bearing on the question of guilt as a whole, and not dissect it into unconnected fragments for separate examination, regardless of their relation to each other.

Only the essential ingredients of the crime need be proved beyond a reasonable doubt. A lower degree of proof may suffice as to circumstances which, while they are of importance in leading to a conclusion of guilt, are not essential to support it.

The term "moral certainty" has not such a precise and definite meaning as to make its use advisable in defining to a jury the degree of proof required for conviction.

The court charged the jury that if all the circumstances proved beyond a reasonable doubt were consistent with the prisoner's being only an accomplice after the fact—a theory suggested in argument by

State *v.* Gallivan.

his counsel—they should not give them any weight as tending to establish the crime charged in the indictment.  *Held* that this was too favorable to the accused; for if, besides the facts proven beyond a reasonable doubt, there were other facts established by a preponderance of evidence, which were inconsistent with the theory of the prisoner's counsel, they might properly be considered as bearing upon the reasonableness of that theory.

The trial judge, in calling the attention of the jury to this hypothesis, told them, in effect, that, before they adopted it, they should ask whether it was justified by the evidence; that no one had testified to the state of things, the possible existence of which it assumed; and that he knew of nothing in the evidence justifying such an assumption.  *Held* that this was erroneous, as it was the right of the jury to pass upon the intrinsic probability of the theory of the defense, and to accept it if it was not inconsistent with any of the facts proved, without first asking if there was any affirmative testimony to the facts which it presupposed.

Such an error will not be treated as harmless in a capital case, merely because the court properly instructed the jury earlier in the charge, that the proof must exclude every reasonable hypothesis of innocence.  They might naturally regard the later instruction, so far as it stated a different rule from the general one previously given, as qualifying and altering it.

Nor can the error be held harmless, because the prisoner's counsel did not claim that the hypothesis was true, but asserted the entire innocence of his client.  The accused has the right to claim that he is not proven guilty of any crime, and also that if any crime is proven, it is not the one charged in the indictment; and to have the jury properly instructed as to both claims.

Argued October 21st—decided December 5th, 1902.

INDICTMENT against the defendant jointly with Thomas M. Wormsley, for murder in the first degree.  Having asked and been granted a separate trial, he was tried to the jury (*George W. Wheeler, J.*).  Verdict of guilty of murder in the second degree and sentence to imprisonment for life in the State's Prison, from which he appealed, alleging errors in the conduct of the trial.  *Error and new trial ordered.*

The case is sufficiently stated in the opinion.

*Joseph L. Barbour*, with whom were *Charles F. Thayer* and *Jeremiah J. Desmond*, for the appellant (the accused).

*Solomon Lucas*, State's Attorney, with whom was *Charles W. Comstock*, for the appellee (the State).

BALDWIN, J. The indictment charges the defendant in one count with murder committed in the course of an attempt to rob Shumway, the murdered man, and in another with murder committed while actually robbing him. Wormsley, who was indicted with him, was a witness for the State, and testified that both he and the defendant made a murderous assault upon Shumway for the purpose of robbery, and actually robbed him of a considerable sum in bank bills before he died; that one of them, for $20, he soon afterwards had changed at the store of one Sherman; and that most of the rest was taken by the defendant to hide in the cellar of his father's house. It appeared, on Wormsley's cross-examination, and by other witnesses, that he had made previous statements, some of them under oath, before the coroner, which were flatly contradictory to his present testimony, and were to the effect that the defendant had nothing to do with either the robbery or the murder. Wormsley was a colored lad of eighteen, who worked for his board on a milk farm belonging to the defendant's father, with whom the defendant also lived.

In order to corroborate the evidence which he had given, Sherman was produced as a witness by the State and testified that he had changed a $20 bank bill for Wormsley soon after the murder. Evidence had been given by one Vars, that Shumway had a number of $20 bank bills in a bag in his inside vest pocket a few weeks before his death.

This testimony from Sherman was properly admitted. It tended, in connection with that given by Vars, to show that Wormsley, soon after the murder, had a bill in his possession of a kind similar to bills which shortly before that event had been in the possession of Shumway. It was important for the State to produce some evidence from an independent source to corroborate Wormsley, since he occupied the position of a self-confessed accomplice. *State* v. *Williamson*, 42 Conn. 261. Such corroboration was not necessarily to be confined to points directly connecting the defendant with the crime. *State* v. *Maney*, 54 Conn. 178, 192.

For similar reasons, testimony was rightly received that

$460 in bank bills was found in the cellar where Wormsley had testified that the defendant said he intended to conceal the fruits of the robbery.

The defendant requested the court to instruct the jury that in determining whether he was guilty they need consider only such circumstances as necessarily tended to prove his guilt; that every circumstance relied upon by the State must, as a separate issue by itself, be proved beyond a reasonable doubt; and that the circumstances so proved must establish to a moral certainty the particular hypothesis to prove which they were offered, and be inconsistent with any other hypothesis.

These instructions were properly refused. The jury were to consider the whole evidence bearing on the question of his guilt, taken together, and were not bound to dissect it into unconnected fragments for a separate microscopic examination of each, regardless of its relations to the rest. That only must, as matter of law, be proved beyond a reasonable doubt, on which the guilt of the accused essentially depends. Such proof, for instance, in this case was requisite in respect to the death of Shumway. That was an essential ingredient in the crime. A lower degree of proof might suffice as to circumstances which, while they might be of some and even of material importance in leading up to a verdict of guilty, would not be essential to support it. *Bressler* v. *People*, 117 Ill. 422, 8 Northeastern Rep. 62; *Acker* v. *State*, 52 N. J. L. 259, 19 Atl. Rep. 258.

Nor, in the application of evidence, could the jury be restricted by any particular hypothesis suggested by the State, as bearing on which such evidence might have been offered. They were to consider all that had been proved as bearing upon all that had been charged in the indictment, and were at liberty to adopt any hypothesis as to the defendant's guilty connection with the crime which to their minds was established beyond a reasonable doubt.

Nor was it necessary to instruct them that such hypothesis must be established to a moral certainty, by circumstances proved beyond a reasonable doubt which were inconsistent

with any other hypothesis. As to this, the jury were properly and sufficiently instructed that "in order to establish the guilt of the accused beyond a reasonable doubt the proof ought to exclude every reasonable presumption or hypothesis of innocence in the mind of each juror, and all the essential elements of the crime charged ought to be established beyond a reasonable doubt." It was not necessary to exclude an unreasonable hypothesis. Nor is the phrase " moral certainty " one the use of which is likely to be of benefit to a jury. It is an artificial form of words having no precise and definite meaning. As explained in one dictionary (the Century) it signifies "a probability sufficiently strong to justify action upon it ; " in another (Webster's International), the first definition given is " a very high degree of probability, although not demonstrable as a certainty." It has been also used as indicating a conclusion of the mind established beyond a reasonable doubt. *Commonwealth* v. *Costley*, 118 Mass. 1, 24. The nature of a reasonable doubt was fully stated to the jury by the trial judge, in a manner to which no exception has been taken.

The defendant's counsel claimed in argument that some of the circumstances which the State claimed to have proved (such as the finding of the bank bills in the cellar, and certain conduct and statements of the defendant after the murder), were consistent with a reasonable hypothesis of his innocence of the crime charged, namely, the hypothesis that Wormsley committed it alone, and then told him of it and perhaps gave him some of the money, after which Gallivan hid the money and concealed the knowledge thus acquired. They then asked the court to instruct the jury that if all the circumstances proved beyond a reasonable doubt tending to establish the defendant's guilt were in their opinion " consisttent with this theory," then they were not to give them any weight as tending to establish his guilt under the indictment for murder. The court gave this instruction with the following qualification : " except and unless the facts referred to tend to corroborate Wormsley's statement, for which purpose they cannot be discarded."

The instruction thus given was too favorable to the accused. It gave some countenance to the claim of his counsel that the circumstances proved beyond a reasonable doubt were to be classed and considered by themselves, without any reference whatever to the existence of other circumstances as to which the evidence might be less convincing. The jury had a right to take into account, for some purposes, in coming to a final decision of the cause, any incriminating testimony which, in their opinion, was probably true, though they might not deem the facts which it went to establish proved beyond a reasonable doubt. If all the facts in support of the indictment that were proved beyond such a doubt were consistent with the hypothesis that Gallivan was only an accessory after the fact, but there were other circumstances inconsistent with that hypothesis, of the existence of which they were satisfied by a preponderance of evidence, although not beyond a reasonable doubt, they could properly consider those circumstances as bearing upon the reasonableness of the hypothesis so suggested to them, and avail themselves of whatever light they might regard them as casting upon the issue to be determined by their verdict. *State* v. *Rome,* 64 Conn. 329, 333; *Commonwealth* v. *Webster,* 5 Cush. 295, 313.

In a previous part of the charge, however, the court, after calling the attention of the jury to the defendant's claim that certain specified facts and circumstances which the State had offered evidence to prove, were " explainable upon the theory that Wormsley committed the crime and told Gallivan of it, and Gallivan helped him to conceal it," had remarked as follows: " You should ask yourselves first, in considering this claim, whether it is true that such a theory would explain all or some of these circumstances, and you should ask where is the evidence that Wormsley told Gallivan of the crime he had committed and Gallivan helped him to conceal it. No one has testified to this, as I remember ; and are there any facts in evidence from which reasonably you could draw inferences which would justify such a theory? Your attention has not been called specifically to any evidence justifying an inference that Wormsley told Gallivan of the crime and Gal-

livan helped him to conceal it, and I know of none in the evidence to which I could call your attention. But the matter is for your consideration and your determination." Afterwards the instructions before quoted were given, shortly before the cause was committed to the jury, and the court then added these further observations: "I have already stated, gentlemen, to you, that before you adopt such a theory you should ask yourselves whether the evidence justifies such a theory, or the facts submitted warrant such an inference: whether the theory arises, in fact, from the evidence, or otherwise? I need not repeat what I have already said on that subject to you. It is a matter for your sound judgment and consideration."

The jury were thus told emphatically and repeatedly that, in considering this claim, it was their duty to ask where there was any evidence of the state of facts assumed by the hypothesis thus suggested, and whether such a state of facts could reasonably be inferred from anything that was in evidence. But the question for them was rather whether, in view of the facts which they might find to be established, such an hypothesis could be reasonably deemed an admissible one. It was not a question of their making the inference or adopting the theory. It was not a question of the existence of affirmative evidence tending to show that Gallivan knew nothing of the murder until after its commission, and then learned it from Wormsley. The jury might be of opinion that the theory thus set up by the defense had no such support and was an improbable one, and still believe that it might be reasonably entertained and was not inconsistent with any of the facts proved, although to them another—that of Gallivan's active participation in the murder—appeared the more reasonable and the right one.

An hypothesis cannot be pronounced unreasonable in any case, which might be reasonably assumed upon a consideration of facts in evidence, or of such facts together with inferences legitimately founded upon them. The evidence need not go directly to support it. In the case at bar, it was undisputed that Gallivan was in company with Wormsley shortly

after the murder, and that they went off together on an excursion to a neighboring city the same evening, returning at a late hour. There was therefore an opportunity for private conversation between them on the night following the crime, and they continued for some days later to reside on the same farm, taking their meals in the house in the cellar of which the money was found hidden. Under these circumstances the jury were not excluded from considering the theory that Wormsley was the sole murderer and Gallivan only an accessory, because there was no positive testimony to that effect. That a prisoner's guilt must be proved beyond all reasonable doubt, has been said by high authority to be but another way of stating that every supposition, not in itself improbable, which is consistent with his innocence, ought to be negatived. 1 Stephen, History of the Criminal Law of England, 438. It was the right of the jury to pass upon the intrinsic probability of the theory suggested by the defense, when applied to the facts before them, without first asking if there were any positive testimony as to the conversation which it presupposed.

If errors are assigned and found in the conduct of a trial, it is our duty to order a new trial, unless we are convinced that they are "immaterial or such as have not injuriously affected the appellant." General Statutes, Rev. 1902, § 802.

The jury in this cause had, in the early part of a lengthy charge, been properly instructed that to justify a conviction of the accused, the proof ought to exclude every reasonable presumption or hypothesis of innocence. But this general observation was, to say the least, not more likely to impress itself upon their minds as a complete statement of the law in this respect by which they were to be guided, than the particular observations in respect to the particular hypothesis relied on by the defendant, which were made and repeated later, and very shortly before they retired to consider their verdict. Where the court, at the conclusion of a charge, returns to a subject considered in an early part of it, and gives additional instructions in regard to it, the jury may naturally regard them, so far as they may state a new and different rule, to be intended to qualify, as a last word, that which

had been previously said. *Ashborn* v. *Waterbury*, 69 Conn. 217, 219; *State* v. *Yanz*, 74 id. 177, 180.

The reasons of appeal founded upon this part of the charge relate to instructions as to a claim which we do not feel justified in pronouncing immaterial. They may have led the jury to believe that the defendant could take no benefit from the hypothesis which he suggested, in the absence of affirmative evidence tending to show that what it assumed to be true was true. If this be doubtful, the doubt, in a case like this, in which a man was on trial for his life, should be resolved in favor of the accused.

The finding states that while the counsel for the defendant presented this theory to the jury in argument, it was only " as an assumption, a possible theory, and one in which he disclaimed all belief or confidence; " that he denied the existence of any guilty knowledge on the part of his client; and that he did not claim that the facts were as the theory assumed them to be, or that there was evidence that they were such.

It was the right of counsel to contend both that the accused was guiltless of any crime, and that, if guilty of any, there was at least a reasonable doubt whether it was one for which he could be convicted on the present indictment. He had requested the court in writing to instruct the jury in respect to the hypothesis on which the latter claim was based, and it remained the duty of the court to give such instructions, notwithstanding what had been said in the final argument. The instructions which were given properly qualified the instruction requested, in respect to the consideration due from the jury to facts which might be consistent with the defendant's theory, as corroborative of Wormsley's testimony. In the added remarks as to their adoption of such a theory and the basis of evidence required for its support, there was error.

An application to rectify the record has been presented. All the points of law which the defendant desired to raise were sufficiently presented by the record as sent up.

The application to rectify is denied; but error is found and a new trial ordered.

In this opinion TORRANCE, C. J., and HALL, J., concurred; HAMERSLEY and PRENTICE, Js., dissented.