## THE STATE OF CONNECTICUT *vs.* EMIL SCHUTTE.

First Judicial District, Hartford, May Term, 1922.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

The law as to setting aside verdicts and granting new trials is the same in criminal as in civil causes.

A verdict will be set aside only when manifest injustice has been done thereby and the wrong is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they, or some of them, were influenced by corruption, prejudice or partiality.

Great weight is to be given to the action of the trial court in granting or refusing a motion to set aside a verdict; and this is especially true in a capital case, where it must be presumed that the court gave the motion the most serious consideration before passing upon it.

General Statutes, § 6633, provides that no person shall be convicted of any crime punishable by death, without the testimony of at least two witnesses or that which is equivalent thereto. *Held* that under this statute, which was designed to prevent a person from being put to death by the unsupported testimony of one witness, it was not essential that there should be two or more witnesses to every fact constituting an essential element of the capital offense; but that it was sufficient if there were two or more witnesses each testifying to different parts of the same transaction, or to different circumstances attending it, and all concurring to prove the crime charged, although there might not be two witnesses to any one fact.

The defendant was convicted of murder in the first degree upon testimony which included that of his son who alone testified as an eye-witness of the crime. *Held* that the court did not err in charging the jury in effect that such conviction might be had, if the guilt of the defendant was proven beyond a reasonable doubt, and if there was corroboration of the testimony of the eye-witness from one or more other witnesses by testimony of facts tending to prove one or more essential elements of the crime charged, so as to constitute in their judgment the equivalent of the two witnesses required by the statute; and that it did not err in refusing to set aside the verdict rendered.

It is within the reasonable discretion of the trial court to interrupt counsel during argument and make a statement as to the law on a point involved in the case, if it thinks the occasion makes it essential to the proper conduct of the trial.

The State *v.* Schutte.

Where the State relies upon the testimony of a self-confessed accomplice of the accused, it is important for it to produce some evidence from an independent source to corroborate such testimony; but such corroboration need not as a matter of law be confined to points directly connecting the accused with the crime.

The trial court has discretion to permit counsel on cross-examination to inquire into acts of misconduct of the witness which indicate a lack of veracity, but such inquiry cannot be had as to acts of misconduct tending merely to show bad moral character in general, as living in adultery with a married woman.

It is not error for a court to disregard a request to charge in which are grouped a series of possible findings of the jury as to certain subordinate facts, with the request that the jury be charged that if they make such findings they should render a verdict of not guilty.

Argued May 3d—decided June 3d, 1922.

INDICTMENT for murder in the first degree, brought to the Superior Court in Middlesex County and tried to the jury before *Maltbie, J.;* verdict and judgment of guilty as charged, and appeal by the accused. *No error.*

*Gustaf B. Carlson* and *Daniel J. Donohoe,* for the appellant (the accused).

*Ernest A. Inglis,* State's Attorney, and *Bertrand E. Spencer,* for the appellee (the State).

CURTIS, J.   The appellant was indicted and convicted of the crime of murder in the first degree, in that he wilfully, deliberately and premeditatedly killed one Joseph Ball in the town of Haddam on December 10th, 1915.

The principal claim made on this appeal is that the verdict of the jury, that the accused was guilty of murder in the first degree, does not find sufficient support in the evidence to justify its return, and therefore that the court erred in denying the defendant's motion to set aside the verdict.   The grounds alleged in

the motion may be grouped as follows: 1. The State failed to prove the defendant's guilt beyond a reasonable doubt. 2. The defendant was convicted of murder in the first degree, a crime punishable by death, without the testimony of at least two witnesses or that which is equivalent thereto.

The law regulating the granting of new trials by setting aside verdicts, is the same in civil and criminal proceedings. "A verdict will be set aside 'only when manifest injustice has been done by the verdict, and the wrong is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they, or some of them, were influenced by corruption, prejudice, or partiality.'" *State* v. *Buxton*, 79 Conn. 477, 480, 65 Atl. 957. "We have repeatedly said, great weight is to be given to the action of the trial court in any case in granting or refusing a motion to set aside a verdict. This is especially true in a capital case, where it must be presumed that it gave the matter most serious consideration before passing upon the motion." *State* v. *Washelesky*, 81 Conn. 22, 25, 70 Atl. 62.

The claim that the defendant's guilt was not proved beyond a reasonable doubt, is based for the most part on the contention that the jury must have given greater weight to the testimony of the son of the accused, who testified that he was an eye-witness of the killing of Ball by the accused, than was justified in view of certain facts and circumstances in evidence. The credit to be given to a witness is a matter peculiarly within the province of the jury. If the jury were so grossly misled by the testimony of one witness that the facts in evidence made this manifest, it is not reasonably probable that a trial court would have failed to become aware of the fact, and would not upon opportunity

have corrected the wrong done, especially in a capital case. We have carefully examined the record, and are satisfied that the jury could reasonably have found that the guilt of the accused was proved beyond a reasonable doubt.

The defendant's remaining claim under his motion to set aside the verdict, is that the jury could not reasonably have found that the statute (§ 6633) which provides that "no person shall be convicted of any crime punishable by death without the testimony of at least two witnesses, or that which is equivalent thereto," had been satisfied by the evidence presented. It is apparent from the record that the court and counsel for the accused took radically different views as to the true construction of this statute. The action of the trial court in denying the motion, is, therefore, to be weighed in the light of that situation.

The interesting history of the origin of this statute, which is unique in Anglo-Saxon jurisprudence, may be found in *State* v. *Marx*, 78 Conn. 18, 60 Atl. 690. The accused claims that the court erred in its charge in relation to this statute, and also erred in denying a motion to set aside the verdict, on the ground "that the defendant was convicted of murder in the first degree, a crime punishable by death, without the testimony of at least two witnesses or that which is equivalent thereto." As to this statute, the court charged in part as follows: "Now akin to this principle that the State must prove the accused guilty beyond a reasonable doubt, is another principle which comes into play in first-degree murder cases, and that is this: Perhaps I cannot do better than read to you the statutory provision. It is a very old statute. 'No person shall be convicted of any crime punishable by death without the testimony of at least two witnesses, or that which is equivalent thereto.' It says, you see, 'No person shall

be convicted of any crime punishable by death.' The charge here is first-degree murder, and it means, therefore, that before you could bring in a verdict of guilty of first-degree murder, you must be satisfied that there has been offered to you the testimony of at least two witnesses or that which is equivalent thereto. It does not mean, however, that you could not, if you are satisfied beyond doubt of the presence of the necessary elements, bring in a verdict of second-degree murder, or of manslaughter, even though you could not find that there were two witnesses or the equivalent thereto. In other words, this provision applies only to proving a verdict of first-degree murder, and not to proving one of second-degree murder or manslaughter. As to its meaning, a word or two is, I think, necessary. It says 'the testimony of at least two witnesses.' That does not mean that there shall be two witnesses to the actual commission of the crime; it does not mean that there shall be two witnesses as to any single fact, both testifying to the same fact. All it means in its requirement as to two witnesses, is that there shall be two witnesses testifying to material and relevant circumstances or facts tending to show the guilt of the accused, —perhaps to the same fact, but not necessarily—perhaps to other facts, and circumstances, but there must be at least two witnesses or the equivalent thereto, testifying to the same or different facts or circumstances material and relevant to show the guilt of the accused. . . . Now, 'equivalent thereto,' means that there may not be two witnesses giving direct testimony as to certain facts or circumstances tending to prove the guilt of the accused. There may be one witness, and then there may be circumstances and facts in the case shown indirectly, as to which no person can say, 'I saw,' 'I heard,' and the combination of those two,—of the one direct witness and of the facts and

circumstances—may be sufficient in your judgment to amount to testimony equivalent to that of two witnesses."

It is essential, in discussing the proper construction of this statutory requirement, to bear in mind that it has no bearing upon the trial of a capital offense unless the jury finds that the essential elements of the capital crime charged have been proved beyond a reasonable doubt. The jury must be charged that even if they so find, they must not find the accused guilty of murder in the first degree, unless the case is proved by the testimony of at least two witnesses or that which is equivalent thereto.

The purpose of this statute was to prevent a person being put to death by the unsupported testimony of one witness. The construction of the statute from the earliest times has been in accord with that purpose. In Swift's Evidence, published in 1810, we find the earliest discussion of this statute in our legal writings. On page 142, the author says: "But from a high regard for life, it has been enacted by statute, that no person shall be put to death, but by the testimony of two or three witnesses, or that which is equivalent. In the consideration of this statute, it has not been deemed necessary that there should be two, or more witnesses to testify to every fact constituting a capital offense; or to every circumstance from which it might be presumed [inferred]. The statute does not require two, or more witnesses to the same fact. If there be two, or more witnesses, each testifying to different parts of the same transaction, or to different circumstances attending it, and all concurring to prove the crime alleged; this will be sufficient to warrant a conviction, though there should not be two witnesses to any one fact. If one witness should testify directly to the principal fact, and another to circumstances corroborating it,

this would be sufficient; for here would be the testimony of two witnesses. But a single witness, however positive, and however credible, will not warrant a conviction, where life is in question." In Swift's Digest (Vol. 2) published in 1823, on page 406, the above statement is repeated in substance, also in Dutton's Revision of Swift's Digest (Vol. 2, p. 431) published in 1853 and reprinted in 1874.

We are satisfied that the construction of this statute, as thus stated by Swift, is correct. Swift states that "if there be two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances attending it, and all concurring to prove the crime alleged, this will be sufficient to warrant a conviction, though there should not be two witnesses to any one fact." By "different parts of the same transaction, or different circumstances attending it," the author refers to relevant facts tending to prove an essential element of the capital crime charged. All that the statute requires, therefore, is that the proof of all the essential elements of the capital crime charged (each of which must be proved beyond a reasonable doubt) shall not depend upon the testimony of one witness. If one or more witnesses testify to facts relevant and sufficient to prove some of the essential facts of the capital crime charged, and another witness or witnesses testify to facts relevant and sufficient to prove the remaining essential facts, the jury may find that the statute has been satisfied. If one witness, as in this case, testifies as an eye-witness to the commission of the capital crime charged, that is, testifies to facts relevant and sufficient to prove all the essential facts of the capital crime charged, and another witness or other witnesses testify to facts relevant and sufficient to prove any one or more of the essential facts, then the jury may find that this statutory requirement has been satisfied.

This statute was first discussed by us in *State* v. *Smith*, 49 Conn. 376, 385. In that case CULVER, J., giving 2 Swift's Digest, 406, as his authority, states the law as follows: "The rule on the subject is well settled. If there are two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances concerning the case, tending directly to show the guilt of the party accused, it may be regarded as a sufficient compliance with the statute, although there may not be two witnesses to any one fact or circumstance." It appears, therefore, that the court was stating a well-settled rule to be found in Swift's Digest, which was the rule above quoted. We were not announcing in *State* v. *Smith* a change in the well-settled rule, as found in Swift, by engrafting upon it a new requirement, when we used the term "tending directly to show the guilt of the party accused." That term was used in the sense of relevant to prove the guilt of the accused. What we have said as to *State* v. *Smith*, applies equally to other cases where the same statement of the rule appears, as in *State* v. *Marx*, 78 Conn. 18, 22, 60 Atl. 690. This interpretation of the cases is confirmed by our approval of the charge of the trial court as to this statute, given in response to the defendant's first request to charge, in *State* v. *Bailey*, 79 Conn. 589, 596, 65 Atl. 951. The trial court charged: "By this statute the testimony of one witness swearing either directly or to circumstances, is not enough to convict of murder in the first degree. It must be the testimony of two witnesses, or that which is equivalent thereto. This does not mean that there must be two witnesses to every fact or circumstance constituting the same. If there be two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances attending it, and all concur to prove the crime alleged, this may be sufficient to warrant a conviction though

there should not be two witnesses to any one fact. It must be the equivalent of two witnesses; and you are the judges whether the testimony be that of two witnesses or the equivalent thereto." In this charge the term "tending directly to show the guilt of the party accused," is not used.

If the defendant's contention is correct, the court should charge the jury that in passing upon the requirements of the two-witness statute they can only consider testimony introduced which, although relevant to prove one or more of the essential elements of the crime charged, also tends directly to show the guilt of the accused, that is, directly indicates that the accused committed the crime. We are satisfied that the history of the statute, its proper construction and the practice under it, does not justify such a refinement. A fundamental error of the defendant is the conception that the purpose of this statute is to require the jury to find that the evidence presented satisfies them of the accused's guilt of the capital crime charged, as fully as the testimony of two eye-witnesses of his commission of the crime would satisfy them. From an examination of the evidence reported, it is clear that the jury, after finding that the essential elements of the capital crime charged had been proved beyond a reasonable doubt, could reasonably have found that there were two witnesses, or that which is equivalent thereto, to one or more of the essential elements of the capital crime charged.

The assignments of error as to the refusal of the court to set aside the verdict, are not well taken. From the foregoing discussion it appears that the 3d, 4th and 8th assignments of error as to the charge of the court set forth in the additional appeal are not tenable.

The defendant claims in his second assignment of error in the additional appeal, that the court com-

mitted prejudicial error in and while making an interruption of counsel in the course of his argument to the jury as set forth in the finding, and also in its statements as to the law in relation to corroboration of an accomplice made during the interruption. There is nothing in the record to indicate that the court, in making the interruption, was not properly exercising the discretion resting in the court to interrupt counsel during argument if it thinks the occasion makes it essential to the proper conduct of the trial. It remains, therefore, to consider the law then stated to the jury. What the court then said, the defendant says was later repeated in substance in the charge, and we may conveniently consider it in the terms there used. The court charged in substance: "It used to be a rule that you never could accept the testimony of an accomplice unless it was corroborated. That is not the rule today. It is no longer absolutely necessary that the testimony of an accomplice should be corroborated before you accept it. However, I think it commends itself to our own good judgment that where an accomplice assumes to testify as to the circumstances in a case, we ought to look with particular care upon his testimony, and that in many instances, perhaps in most instances,—yes, I will say in most instances, it would be unsafe to rely upon it unless it was corroborated. Whether corroboration is necessary, and the extent to which it is necessary, are matters which rest in your own sound judgment, having in mind the various things which I have just spoken of—whether the testimony which he gives is affected by bias or prejudice; is contradicted in some respect; whether he has an interest in the matter,— having in mind all these other elements, it is then for you to say to what extent corroboration is necessary. And perhaps in this case not the least element which you should consider in that connection, is the question of

his moral turpitude. That is a proper element—the moral turpitude which an accomplice admits—is one of the elements which you are to have in mind when you consider how much corroboration, if any, you ought to require. . . . In other words, under our rule corroboration does not have to tie up the accused to the particular offense; it is enough if there is evidence in the case which tends to fortify and strengthen the testimony of the accomplice in some material and relevant particular—material and relevant to the guilt of the accused."

The defendant claims that the law in this State is, or at least should be, in accord with certain statutory requirements of other States as to corroborating evidence, to the effect that the testimony of an accomplice can be corroborated only by such other evidence as tends to connect the accused with the commission of the crime. The law has been settled to the contrary in this State after due consideration. In *State* v. *Gallivan*, 75 Conn. 326, 328, 53 Atl. 731, we say, in effect, that it was important for the State to produce some evidence from an independent source to corroborate the testimony of a self-confessed accomplice. "Such corroboration was not necessarily to be confined to points directly connecting the defendant with the crime." A jury may feel such mistrust of the testimony of an accomplice that corroborating evidence which does not directly connect the accused with the commission of the offense, may not satisfy them that sufficient corroboration has been shown to justify reliance upon the testimony of the accomplice; but that is a question of the effect of testimony upon the jury, not a question of law as to what corroborating evidence is. The statement of the court to the jury at the time of the interruption and as amplified in the charge, was correct in law and adequate to the situation presented. *State* v. *Carey*, 76

Conn. 342, 56 Atl. 632; *State* v. *Gallivan,* 75 Conn. 326, 328, 53 Atl. 731.

In the first additional assignment of error, the defendant claims error in a ruling as to the exclusion of a question to a witness of the State upon cross-examination. William Schutte having testified for the State as to certain relevant conduct of the accused, was asked upon cross-examination: "Did you live in adultery with a married woman while you were in St. Louis?" This question was asked solely to affect the credibility of the witness, and was excluded. In this State it has been established by abundant authority that in the cross-examination of a witness acts of misconduct tending merely to show bad moral character in general are not admissible. If acts of misconduct which indicate a lack of veracity are inquired into on cross-examination, it is then within the discretion of the trial court whether or not to permit such examination. *Shailer* v. *Bullock,* 78 Conn. 65, 69, 61 Atl. 65; *Dore* v. *Babcock,* 74 Conn. 425, 50 Atl. 1016. The act of misconduct inquired about, of William Schutte, and excluded, does not indicate a lack of veracity, but indicates bad moral character, and was therefore properly excluded. *State* v. *Randolph,* 24 Conn. 363.

The seventh additional assignment of error, which is not pressed in the brief, is obviously untenable. It relates to a request to charge, in which are grouped a series of possible findings of the jury as to certain subordinate facts, with the request that the court charge the jury that if they make such findings they should render a verdict of not guilty. The court is not required to adopt a grouping of subordinate facts by the defendant as a test of his guilt and pass upon its validity. The court states in its charge what the essential facts are, which constitute the capital crime charged, and that each such fact must be proved beyond

a reasonable doubt, with such comment upon the evidential facts as he deems proper to a fair and impartial trial. The court in its charge to the jury dealt with the importance of the various facts in evidence adequately and impartially.

This opinion discloses that the fifth and sixth additional assignments of error are not well taken. The ninth assignment of error was not pressed.

There is no error.

In this opinion the other judges concurred.