STATE OF CONNECTICUT *v.* EDWARD PALMER
(3125)

BORDEN, SPALLONE and BIELUCH, Js.

*(One judge dissenting)*
Argued May 8—decision released August 12, 1986

*John R. Williams,* for the appellant (defendant).

*Frank S. Maco,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

BIELUCH, J. The defendant has appealed from the judgment rendered after his conviction by a jury of two counts of attempted murder in violation of General Statutes §§ 53a-54a (a) and 53a-49. He claims as error (1) the trial court's denial of his motion for acquittal based on the sufficiency of the evidence, and (2) its refusal to instruct the jury concerning lesser included offenses.

The jury could reasonably have found the following facts. On December 20, 1980, Detective Robert Kwet and Officer Kathy Sheehan, then Kathy Kwet, police officers of the city of Bridgeport and formerly husband and wife, were assigned to a special rape decoy detail. The special operation was designed to lure an unknown male, termed the "bumper rapist," who was sexually assaulting lone women whose cars were rammed from behind by him when they were stopped at stop signs. After they exited their vehicles in response to the intentional collision caused by him, they became his prey.

Sheehan drove her personal car while Kwet was positioned in the back seat out of view. Shortly after midnight, Sheehan noticed that she was being followed by a car. After she stopped at a stop sign, the vehicle that was following her struck the back of her car. Sheehan stated to Kwet, "This must be him." At about that time, her car was bumped again. She then left the car holding her service weapon in her right hand behind her and concealed by a coat. Kwet was lying prone on the rear seat out of sight. The driver of the second car, a male, having left his car at the same time, approached her. When they were eight to ten feet apart, Sheehan saw that the individual was raising a revolver and pointing it at her. When Sheehan saw this, she felt that she was in immediate danger of her life. She and the man then fired at each other almost simultaneously. After firing her weapon once, Sheehan thought she had been hit. She noticed a hole in her car about six inches away

from her leg, and then jumped back into the front seat of her car when she heard an exchange of gunfire between Kwet and the attacker. Kwet yelled to her to get down because they were still being fired upon.

From his position in the back seat, Kwet observed the man coming at the car. Kwet then fired through the back window. The attacker retreated, but shots then rang out from in back of Sheehan's car. When Kwet was being fired upon, his head and shoulders were visible through the rear window. After receiving gunfire from the rear of Sheehan's car, Kwet smashed the rear window and saw the attacker, first, on the left side of his own car by the fender, and then in the car, bobbing his head up and down near the dashboard three or four times. The attacker then fled in his car and the police lost him.

Sheehan described the individual who struck her car as being 5'9'' or 5'10'' inches tall, of medium build, dressed in dark clothing and wearing a ski hat pulled down over his face. Kwet described the man as having his face covered with a knit cap. He stated that two shots were fired by the assailant at his wife and two shots were fired at him. Kwet noticed ricochet marks on Sheehan's vehicle which resulted from the assailant's gunfire.

Subsequently, a bullet was discovered in Sheehan's car. This was established as having been fired from a weapon that was proved to be in the possession of the defendant at the time of the incident. The defendant was identified as the person who stole the revolver in Bridgeport on November 28, 1980. The weapon was later found in the defendant's possession when he was arrested during a burglary at the Superior Court in Bridgeport almost three months after the shooting.

We find no merit to the defendant's claim of error that there was insufficient evidence to convict him of

two counts of attempted murder beyond a reasonable doubt. The jury, in finding the defendant guilty, reasonably found that the defendant stole a revolver, that a person similar in height and build to the defendant fired that same revolver approximately three weeks later during the shoot-out with Kwet and Sheehan, and that the defendant was still in possession of the weapon almost three months after the shooting when he was apprehended in the course of a burglary at the courthouse. "[I]n a criminal prosecution, the state has the burden of proving the case set forth in the information in all its material parts beyond a reasonable doubt, so that the court must find, in order to convict, that all the elements of the crime charged have been established beyond a reasonable doubt." *State* v. *Johnson,* 162 Conn. 215, 231, 292 A.2d 903 (1972); *Lego* v. *Twomey,* 404 U.S. 477, 92 S. Ct 619, 30 L. Ed. 2d 618 (1972); *State* v. *Gallivan,* 75 Conn. 326, 329, 53 A. 731 (1902). "In determining whether the evidence is sufficient to sustain a verdict, 'the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.' " *State* v. *Giguere,* 184 Conn. 400, 402–403, 439 A.2d 1040 (1981), quoting *State* v. *Bember,* 183 Conn. 394, 397, 439 A.2d 387 (1981). In ruling on such a motion, it is well settled that the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978). The evidence in this case, both direct and circumstantial, reviewed in accordance with the above principles, fully supports the guilty verdicts of the jury.

We also conclude that the court did not err in refusing to instruct the jury on lesser included offenses. The defendant requested in writing that the trial court

instruct the jury on the lesser included offenses of reckless endangerment in the first degree; General Statutes § 53a-63; and threatening; General Statutes § 53a-62. The court declined to do so.

"A defendant is entitled to an instruction on a lesser included offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) the evidence, introduced by either the state or the defendant, or by a combination of their proofs, justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." *State* v. *Tinsley*, 181 Conn. 388, 396–97, 435 A.2d 1002 (1980), cert. denied, 449 U.S. 1086, 101 S. Ct. 874, 66 L. Ed. 2d 811 (1981); *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980). Our concern here lies with the second criterion of this lesser included offense test.

The first count of the information upon which the defendant was tried in this case states, in pertinent part, that the defendant "with intent to cause the death of one Kathy Kwet, did shoot at and attempt to cause the death of said Kathy Kwet." This count sets forth the statutory elements of the attempted murder of Kathy Kwet. The second count alleges the same elements of the crime of the attempted murder of Robert Kwet. Reckless endangerment in the first degree, as defined in General Statutes § 53a-63, states that "[a] person is guilty of reckless endangerment in the first degree when, with extreme indifference to human life, he recklessly engages in conduct which creates a risk of serious physical injury to another person." Under

General Statutes § 53a-3 (4), serious physical injury is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."

A precise parallel to the case before us exists in the penal laws and judicial authority of New York.[1] Under New York Penal Law § 125.25, "[a] person is guilty of murder in the second degree when: (1) With intent to cause the death of another person, he causes the death of such person or of a third person. . . . " This is the same definition of murder as exists in our penal code and as alleged in the two counts of attempted murder of which the defendant was convicted. New York Penal Law § 120.25 creates the crime of reckless endangerment in the first degree in these terms: "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person." This definition of reckless endangerment in the first degree, while basically similar to that crime in our jurisdiction, is more confining objectively since it adds the element of "depraved indifference to human life" and does not reach below the creation of "a grave risk of death" to "a risk of serious physical injury." Under General Statutes § 53a-63, however, reckless endangerment in the first degree also exists when reckless conduct creates a risk of "serious physical injury to another person" which is also defined in General Statutes § 53a-3 (4) as "serious disfigurement, serious impairment of health or serious loss of impairment of the function of any bodily organ."

[1] Our penal code was enacted by Public Acts 1969, No. 828, effective October 1, 1971. Much of the code is based on comparable provisions of the New York Revised Penal Law, effective September 1, 1967. Commission to Revise the Criminal Statutes, Commentary on Title 53a, The Penal Code, p.1.

The lesser included offense doctrine exists in our jurisdiction by judicial decision. *State* v. *Tinsley,* supra; *State* v. *Whistnant,* supra. In New York, this doctrine has been established by statute. McKinney's Criminal Procedure Law § 1.20, subd. 37. By this enactment, the term "lesser included offense" is defined as follows: "When it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a 'lesser included offense.' " This definition comports with the second criterion of *Tinsley* and of *Whistnant* for a lesser included offense charge, the condition now on review.

In *People* v. *Ramirez,* 79 App. Div. 2d 978, 434 N.Y.S.2d 281, rev'd, 55 N.Y.2d 708, 431 N.E.2d 623, 447 N.Y.S.2d 138 (1981), the New York courts had before them a defendant charged with seven crimes, including two counts of attempted murder in the second degree in violation of Penal Law §§ 125.25, subdivision 1, and 110.00. At the close of the state's case, the trial judge reduced one of the attempted murder counts to reckless endangerment in the first degree in violation of Penal Law § 120.25, and dismissed the remaining counts of the indictment. The defendant appealed on the ground that the conviction for reckless endangerment in the first degree was improper because that crime did not meet the statutory definition of a lesser included offense with respect to the crime of attempted murder in the second degree with which he had originally been charged. The Supreme Court, Appellate Division, Second Department, affirmed the ruling of the trial court.

On further appeal to the Court of Appeals, the Appellate Division was reversed. In *People* v. *Ramirez,* 55 N.Y.2d 708, 431 N.E.2d 623, 447 N.Y.S.2d 138 (1981), the Court of Appeals relied upon the statutory definition of a lesser included offense, which is essentially

equivalent to the second criterion of the *Tinsley* and *Whistnant* test of a lesser included offense under review before us, and overturned the defendant's conviction of reckless endangerment in the first degree as a lesser included offense. The court reasoned as follows: "The plain meaning of [the lesser included offense] statute is clear—that is, that one crime cannot be a lesser included offense of another if it is theoretically possible to commit the greater crime without concomitantly committing the lesser. . . . As the Appellate Division noted in the present case, it is theoretically possible to commit the greater crime of attempted murder in the second degree (Penal Law, §§ 110.00, 125.25, subd. 1) without also committing the lesser crime of reckless endangerment in the first degree (Penal Law, § 120.25) since, if the attempt is rendered innocuous by some circumstance of factual impossibility, no grave risk of death to another person is created, as is required for the crime of reckless endangerment in the first degree. Accordingly, the crime of reckless endangerment in the first degree (Penal Law, § 120.25) is not a lesser included offense of attempted murder in the second degree (Penal Law §§ 110.00, 125.25, subd. 1)." Id., 710–11.

The two counts of the information upon which the defendant in the present case was convicted alleged the offense of attempted murder in the manner specified in our penal code. The elements of these charges as described in the information are identical to those in the charge of attempted murder in the second degree before the New York courts in *Ramirez*. The elements of reckless endangerment in the first degree under our penal code, which the defendant requested be given by the trial court in its jury instructions as a lesser included offense, are similar to those of reckless endangerment in the first degree under the New York penal law which was rejected in *Ramirez* as a lesser included offense

to attempted murder in the second degree, a charge identical to attempted murder under our statutes in §§ 53a-54a (a) and 53a-49. The statutory definition of a lesser included offense before the courts in *Ramirez* is identical to the second prong of the test for a lesser included offense charge set out in *Tinsley* and *Whistnant* and at issue before us. Under these circumstances, *Ramirez* is compelling and we follow its reasoning. It is possible to commit the crime of attempted murder under our penal code without first committing the crime of reckless endangerment in the first degree. The trial court, therefore, correctly refused to charge that reckless endangerment in the first degree was a lesser included offense of the principal charge of attempted murder alleged in the two counts of the information against the defendant. In this case, reckless endangerment in the first degree was not a necessary step in the progression to the crime of attempted murder as charged in the information.

The defendant also claims that the trial court erred in refusing to instruct the jury on the lesser included offense of threatening. General Statutes § 53a-62 defines threatening, as relevant here, as follows: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury. . . ." We disagree with this claim also.

*State* v. *Jacobowitz*, 182 Conn. 585, 438 A.2d 792 (1981), is conclusive of this issue. In *Jacobowitz*, at the close of the state's case at trial, it requested and received the permission of the court to file a second substituted information. The new information deleted the charge of attempted murder and substituted for it the crime of threatening, a violation of General Statutes § 53a-62 (a) (1). The defendant excepted to this substitution. He later appealed from his conviction of the substitute charge of threatening, claiming error by

the trial court in permitting the state, after the close of its case, to file a new information substituting the charge of threatening for attempted murder.

The question of whether threatening is a lesser included offense to attempted murder arose in this context. Unless the original and amended informations charge the defendant with the same crime, amendment is permissible only to charge a lesser included offense. The constitutional right to notice is satisfied as to lesser included offenses because, " 'where one or more offenses are lesser than and included within the one charged, notice of the one charged constitutes notice of any lesser included offenses. . . . ' *State* v. *Rodriguez,* 180 Conn. 382, 402, 429 A.2d 919 (1980)." Id., 590–91. Consequently, the central issue before the court in *Jacobowitz* was whether the crime of threatening is a lesser included offense encompassed within the originally charged crime of attempted murder. Id., 591.

Our Supreme Court found that the trial court erred in permitting the state to substitute a new information charging the defendant with threatening rather than with attempted murder, since the former is not a lesser included offense of the latter crime. "Although there is obvious overlap between the two crimes, each requires proof of different elements: attempted murder under General Statutes §§ 53a-49 (a) (2) and 53a-54a (a) requires the state to show intentional conduct constituting a substantial step toward intentionally causing the death of another person; threatening under General Statutes § 53a-62 requires the state to show that the defendant, by physical threat, intentionally placed or attempted to place another person in fear of imminent serious physical injury. It is not the danger or risk of injury, but the victim's perception, which is essential to the latter crime. As the defendant argues, attempted murder does not require placing in fear, and

it is possible to imagine an attempted murder, such as a shot from ambush, in which there has been no prior threatening act." Id., 592–93. The court then concluded that the information for attempted murder did not charge any prior threatening act, even though it might have done so. While recourse may be had to the evidence presented at the trial with regard to the consideration upon review of the third and fourth criteria of the test for a lesser included offense restated in *State* v. *Tinsley,* supra, and *State* v. *Whistnant,* supra, such evidentiary considerations do not enter into a consideration of the second criterion, which is limited to the contents of the information and the bill of particulars. Id., 593.

The two counts of the information charging the defendant with attempted murder recite separately in the language of General Statutes §§ 53a-54a (a) and 53a-49 that "the said EDWARD PALMER, with intent to cause the death of one KATHY KWET, [and one ROBERT KWET, respectively,] did shoot at and attempt to cause the death of the said KATHY KWET, [and the said ROBERT KWET, respectively,]" in violation of the two statutes. There is no allegation in these counts within the ambit of the charge of threatening under General Statutes § 53a-62. The latter, therefore, is not a lesser included offense within the specifications of the counts alleging attempted murder. The trial court properly refused to charge on threatening as a lesser included offense.

There is no error.

In this opinion BORDEN, J. concurred.

SPALLONE, J., dissenting. The majority has broadened *Whistnant* to the extent that the trial court, when making a determination as to whether a lesser included

offense should be charged, must engage in speculation and be concerned with a plethora of unpleaded "theoretical possibilities."

The second prong of *State* v. *Whistnant,* 179 Conn. 576, 427 A.2d 414 (1980), expressly and categorically restricts the court to the factual allegations enunciated in the charging document: "[I]t is *not possible* to commit the greater offense, *in the manner described in the information or bill of particulars,* without having first committed the lesser. . . . " (Emphasis added.) *State* v. *Whistnant,* supra, 588. A comparison with the language found in *People* v. *Ramirez,* 55 N.Y. 2d 708, 431 N.E. 2d 623, 447 N.Y.S. 2d 138 (1981), that "it is *theoretically possible* to commit the greater crime of attempted murder . . . without also committing the lesser crime of reckless endangerment . . ." (emphasis added); id., 710–11; clearly discloses that our Supreme Court, unlike the New York Court of Appeals, has precluded any magic carpet flight of fancy into the area of speculation and mandates that the trial court examine the charging document within its four corners, and, based on the facts as pleaded therein, conclude whether a charge of a lesser included offense is warranted.

In this case, the information alleges the manner in which the crimes were committed. The defendant was accused of "shooting at" the victims. One can "shoot at" a person without the intent to kill. But it is axiomatic that "shooting at" a person, by the very nature of the act, creates a risk of serious physical injury to that person. Under the facts and circumstances in this case, it is not possible to commit attempted murder in the manner charged in the information without committing the lesser offense of reckless endangerment.

*Whistnant* is clearly distinguishable from *Ramirez,* is better law, and more closely reflects the notion, implicit in Connecticut criminal jurisprudence, that the

state as well as the defendant is better served by a system which requires that the trial court, when making a determination of whether to charge a lesser included offense, does so within the parameters of the charging document and refrains from engaging in an esoteric quest for "theoretically possible" unpleaded events.

Accordingly, I dissent.