STATE OF CONNECTICUT *v.* LESLIE PERKINS

STATE OF CONNECTICUT *v.* RICHARD H. LILLIE

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued May 5—decided June 23, 1959

*George C. Furkiotis,* with whom, on the brief, were *Raymond W. Ganim* and *George W. Ganim,* for the appellants (defendants).

*Lorin W. Willis,* state's attorney, for the appellee (state).

DALY, C. J. These two appeals were combined by order of the trial court pursuant to the provisions of § 382 of the Practice Book. The defendants were charged with the crime of possession of burglar tools in the night season, in violation of § 8408 of the 1949 Revision (Rev. 1958, § 53-71) of the General Statutes.[1] The defendant in the second case was charged with being a habitual offender.

The trial court found the following unchallenged, material facts: About 1:55 a.m. on August 12, 1957, the defendants were walking along the sidewalk on the south side of Capitol Avenue at Norman Street in Bridgeport. They crossed over to the north side of the avenue some 200 feet west of Park Avenue. This section of Bridgeport is a residential neighborhood. A police radio car, facing westerly on Capitol Avenue, was parked at the intersection of Park Avenue and Capitol Avenue. It was equipped with a spotlight on the driver's side and a red dome light on top, but only the parking lights were on at the time. The defendants walked along the north side of Capitol Avenue for only a short distance and then started to cross to the south side. As they continued walking, the officer in the police car began to drive westerly on Capitol Avenue. He proceeded along the avenue, passing the defendants, and then turned south on Norman Street to Cleveland Avenue, where

---

[1] "Sec. 8408. POSSESSION OF ARMS OR BURGLARS' TOOLS IN THE NIGHT. Any person who shall be, in the night, armed with any dangerous or offensive weapon or instrument, with intent to break or enter any dwelling-house or other building and to commit any crime therein, or shall, in the night, have in his possession, without lawful excuse, the proof of which excuse shall be upon him, any key, picklock, jimmy, jack or bit or other instrument of house-breaking or, in the night, shall have his face blackened or otherwise disguised, with intent to commit any crime, or shall be, in the night, unlawfully in any dwelling-house or other building, with intent to commit any crime, shall be imprisoned not more than five years."

he turned his car around and came back to Capitol
Avenue. He again saw the defendants walking along
the south side of Capitol Avenue about twenty-five
feet from the police car. He then heard the sound of
a metallic object striking the ground at the point
where the defendants were walking and saw the de-
fendants continue on their way. After they had
walked on a short distance, he went to the spot where
they were when he heard the sound and discovered
an iron hand bar on the grass by the sidewalk. He
overtook the defendants at Capitol and Wood Av-
enues and asked them what they were doing. The
defendant Perkins replied, "We were just out taking
a walk." The officer then asked the defendants if
they had a car and both of them answered, "No." A
few moments later, in response to a question, the
defendants admitted that they did own cars and
stated they had left them at a place which was more
than a mile from the scene. The officer then called
the attention of the defendants to a Pontiac car
parked a short distance away on Norman Street,
and the defendant Perkins admitted it was his and
said that he had left it there because it had broken
down. The Pontiac was in good working order and
had not broken down.

When the defendants were asked if they had seen
the hand bar, Lillie said, "No," and Perkins made no
reply. Upon further search of the area, another
hand bar was found in the grass at the edge of the
sidewalk at the spot where the officer had first heard
the metallic sound of a falling object. The trunk
compartment of the Pontiac car of the defendant
Perkins was opened with a key found under the front
floor mat, and the following articles were found by
the officer: a large sledge hammer, two pry bars, a
small sledge hammer, a metal hammer, a ball peen

hammer, a screw driver, a toolbox containing wrenches, pliers and screw drivers, another toolbox containing wrenches, and a punch. Under the front floor mat were two screw drivers and four flashlights, the latter not being in working order. Many of these tools were reasonably adapted for use in housebreaking and were of a type customarily used by burglars in forcing the doors and windows of buildings and opening safes. In the questioning by the officer, Perkins stated that the defendants' reason for being in the neighborhood where they were found was that they were looking for a "score," which, Perkins explained, was "a place to hit." He further stated to the police that Lillie was the one who had carried both bars and that Lillie dropped them when he spotted the officer. The bars, known as small jimmies or rippers, were tools reasonably adapted for use in housebreaking and were of a type commonly used by burglars for forcing windows and safes. The large sledge hammer was likewise a tool reasonably adapted for use in housebreaking and was of a type commonly used in the commission of burglaries for breaking down doors and pounding the bottoms or tops out of safes. The two pry bars, known as "rippers," were reasonably adapted for use in housebreaking and were tools of a type frequently used by burglars for opening doors and windows and peeling safe doors. The defendants did not testify and offered no witnesses in their own behalf.

The court concluded that the tools found in the possession of the defendants or under their control were reasonably adapted for use as burglars' tools and were instruments of housebreaking; that such possession and control was without lawful excuse; and that the defendants were guilty of a violation of

§ 8408 of the 1949 Revision as charged. The defendants contend that the court erred in reaching these conclusions. Conclusions by the court are tested by the finding. *Nixon* v. *Gniazdowski,* 145 Conn. 46, 52, 138 A.2d 796; *Investors Mortgage Co.* v. *Schiott,* 143 Conn. 61, 64, 118 A.2d 897. The court's conclusions are supported by the facts found.

The defendants claim that the court erred "[i]n permitting the testimony of Joseph Whisher to be introduced concerning the ownership and theft of [the large] sledgehammer." The witness did not testify concerning the ownership and theft of a sledge hammer. He testified that he had last seen the large sledge hammer on July 26, 1957, at the dairy where he worked, and that when he returned to work the next day he noticed that "the tools were missing." Upon this testimony, the court found that the sledge hammer had been "stolen" from the dairy. Evidence that the hammer was "missing" would not necessarily support a finding that it was "stolen." But the defendants have not assigned error in the court's finding that the sledge hammer had been stolen. This being so, any error in the admission of the evidence was harmless. *Wilson* v. *Darien,* 130 Conn. 318, 322, 33 A.2d 320. Furthermore, the defendants were not charged with possessing stolen goods. Each of them was charged with violating the statute, now § 53-71, which makes it a crime for any person to have burglar tools in his possession in the night, "without lawful excuse, the proof of which excuse shall be upon him." As the defendants offered no evidence, they failed to prove "lawful excuse."

There is no error in either case.

In this opinion the other judges concurred.