STATE OF CONNECTICUT *v.* RONALD S. JOHNSON

HOUSE, C. J., COTTER, THIM, SHAPIRO and LOISELLE, Js.

Argued December 8, 1971—decided January 19, 1972

*Thomas J. Corradino,* for the appellant (defendant).

*Jerrold H. Barnett,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

COTTER, J. The defendant was charged with possessing or having under his control a quantity of marijuana in violation of Public Act No. 555, § 37(a), adopted in the 1967 legislative session, now General Statutes (Rev. to 1968) § 19-481. In this appeal from his conviction, the defendant assigns error, inter alia, in the refusal of the court to suppress evidence seized under a search warrant under which the New Haven police officers acted in gaining

entry to his apartment, claiming it was invalid because it authorized the police to enter and search for various listed items which could be used to violate the conspiracy statute but failed to mention any underlying substantive offense; that, assuming the warrant was not invalid on its face, the only items which could be seized were those listed in the warrant and the seizure of the alleged marijuana was unconstitutional and illegal because it did not authorize the seizure of marijuana; that, even if the warrant was valid, the items seized were not admissible in evidence because of the manner in which the search was conducted; that the court refused to permit a disclosure of an unnamed informant's identity; and that the state failed to prove beyond a reasonable doubt the chain of custody of three glassine bags prior to their introduction into evidence.

The trial court was justified in finding the following: The defendant rented an apartment in September, 1967, on Chapel Street in New Haven, which he was occupying on December 23, 1967, as a lessee, and to which no one else either had a key or access. At approximately 6 p.m. on that day members of the New Haven police department, acting under the authority of a search warrant, gained entry to the apartment and at the time of the entry, finding no one present, they proceeded to conduct a search of the apartment. In the course of the search, one of the officers, Sergeant John O'Connor, found three glassine bags containing plant-like material in the refrigerator in the kitchen of the defendant's apartment. Sergeant O'Connor, from his experience, believed that the bags contained marijuana and he took them into his control and placed them in a shoe box. Later, on December 26, 1967, Detective Otha Buffaloe

of the New Haven police department, received the shoe box from Sergeant O'Connor in the office of the gambling and narcotics squad. Detective Buffaloe kept the shoe box with him and delivered it and its contents to Miss Dorothy Carlson, a receptionist in the toxicological laboratory in Hartford, and they were received by Dr. Abraham Stolman, chief toxicologist for the state.

The three glassine bags were identified and marked in evidence at the trial and each one had the marking 67,4934 on it as well as one other identifying numeral, i.e., either 1, 2 or 3 on the respective bag. These markings were placed on each bag by Dr. Stolman, who made a chemical analysis of the contents which revealed the presence of the narcotic substance marijuana or cannabis plant.

# I

## (a)

We cannot agree with the claim of the defendant that the general conspiracy statute, § 54-197, of the General Statutes, does not define a substantive criminal offense. The defendant, in furtherance of his position, argues that the warrant violates the provisions of the fourth amendment of the United States constitution as well as § 54-33a (b) of the General Statutes, which provides that a search warrant may issue "[u]pon complaint on oath by any state's attorney or prosecuting attorney or by any two credible persons, to any judge of the superior court or the circuit court, that he or they have probable cause to believe that any property (1) possessed, controlled, designed or intended for use or which is or has been used or which may be used as the means of committing any criminal offense." We have repeatedly held

that conspiracy is a common-law crime and punishable as such under the statutes relating to the punishment of high crimes and misdemeanors. *State* v. *Murphy,* 124 Conn. 554, 562, 1 A.2d 274; see *State* v. *Hayes,* 127 Conn. 543, 588, 604, 18 A.2d 895; 16 Am. Jur. 2d, Conspiracy, §§ 1, 2; 15A C.J.S., Conspiracy, § 34. The commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes. *Pinkerton* v. *United States,* 328 U.S. 640, 643, 66 S. Ct. 1180, 90 L. Ed. 1489; *Fimara* v. *Garner,* 86 Conn. 434, 437, 85 A. 670; *United States* v. *Cheers,* 439 F.2d 1097, 1098 (5th Cir.). The crime of conspiracy is dependent on clear principles, and has characteristics and ingredients which separate it from all other crimes. *State* v. *Setter,* 57 Conn. 461, 470, 18 A. 782; see *Johnson* v. *Lee,* 281 F. Sup. 650, 655 (D. Conn.), for a similar view of § 54-197. Since conspiracy in Connecticut is itself a substantive crime, the holding of *Berger* v. *New York,* 388 U.S. 41, 55, 87 S. Ct. 1873, 18 L. Ed. 2d 1040, is inapposite as to this issue.

### (b)

The search and seizure warrant procured by the police officers and issued by a judge of the Circuit Court authorized the police to enter "[t]he premises known as 1345 Chapel Street, New Haven, Connecticut, Room D-22" and search for dynamite, blasting caps, guns, ammunition "and any other paraphernalia which could be used to violate Sec. 54-197 of the Connecticut General Statutes." The defendant claims that the warrant also was "invalid on its face" because the additional language, after specifying certain items to be seized, provided for the seizure of "any other paraphernalia which could be used to violate" the conspiracy statute.

In a prior case, involving the conviction of Ronald S. Johnson, the present defendant, for conspiracy to cause injury to persons and property by means of explosive materials and compounds in violation of § 54-197 of the General Statutes, we passed on the validity of the search warrant presently under consideration in this case, with specific reference to the admission in evidence of a United States Army field manual, and we held in that case that only that portion of the search warrant which authorized the seizure of any "paraphernalia which could be used to violate Sec. 54-197 of the Connecticut General Statutes" was, "in that respect, a general warrant" and that, therefore, only that part of the warrant was to be considered invalid. *State* v. *Johnson,* 160 Conn. 28, 35, 273 A.2d 702. The entry into the premises authorized by the warrant in question was valid and the search for the articles specified in that warrant was legally and constitutionally permissible. Given, therefore, a valid entry and a permissible search we must then consider whether the constitutional guarantee of the fourth amendment prevents the seizure of property the possession of which is a crime even though the searching officers are unaware that such contraband is on the premises when the search is initiated. *Harris* v. *United States,* 331 U.S. 145, 154, 155, 67 S. Ct. 1098, 91 L. Ed. 1399, rehearing denied, 331 U.S. 867, 67 S. Ct. 1527, 91 L. Ed. 1871; 47 Am. Jur., Searches and Seizures, § 52; 79 C.J.S., Searches and Seizures, § 17.

## II

We disagree with the claim of the defendant that, assuming the warrant was not invalid on its face, the seizure of the alleged marijuana was unconstitutional because the warrant did not authorize the

seizure of marijuana. The officers, in this case, were searching the defendant's apartment under authority of a search warrant when one of them discovered items in the defendant's refrigerator which, from his experience, he believed to be marijuana. The items for which the search was conducted, viz., dynamite, blasting caps, guns and ammunition, were in no way related to marijuana, but the possession of marijuana was a crime at the time of the seizure. General Statutes § 19-481. Possession of contraband is a criminal offense and the marijuana was properly subject to seizure. See *United States* v. *Rabinowitz*, 339 U.S. 56, 64, 70 S. Ct. 430, 94 L. Ed. 653. The defendant in this connection relies principally on the requirements enunciated in *Marron* v. *United States*, 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231, in which the court stated, inter alia, that warrants shall particularly describe the things to be seized, making general searches impossible, so that the seizure of one thing under a warrant describing another is impossible.

Exceptions to the rigid test of reasonableness of the *Marron* doctrine, however, have been recognized and approved by the Supreme Court of the United States in *Harris* v. *United States*, supra, and *Abel* v. *United States*, 362 U.S. 217, 80 S. Ct. 683, 4 L. Ed. 2d 668, rehearing denied, 362 U.S. 984, 80 S. Ct. 1056, 4 L. Ed. 2d 1019. The court in the *Harris* case reasserted the proposition that each case must be decided on its own facts and circumstances; and that the "test of reasonableness cannot be stated in rigid and absolute terms." (p. 150) It set forth the exceptions to an otherwise rigid and absolute rule concerning unreasonable searches and seizures which come within the constitutional interdict when it stated (p. 154): "This Court has frequently recognized the dis-

tinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime."

It is also significant that the court in the *Harris* case discussed the situation with respect to seizure under the authority of a search warrant as well as the circumstances involving a search incident to arrest stating (p. 155): "If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated." In *Coolidge* v. *New Hampshire,* 403 U.S. 443, 467–68, 91 S. Ct. 2022, 29 L. Ed. 2d 564, the Supreme Court has recently stated: "Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore it until they have obtained a warrant particularly describing it." See also *Abel* v. *United States,* supra, 234–40.

The exceptions to the *Marron* doctrine promulgated in the *Harris* case have been followed by a great number of lower federal courts. Cf. *Anglin* v. *Director, Patuxent Institution,* 439 F.2d 1342, 1347 (4th Cir.); *United States* v. *Berry,* 423 F.2d

142 (10th Cir.); *Gurleski* v. *United States,* 405 F.2d 253, 259 (5th Cir.); *United States* v. *Alloway,* 397 F.2d 105, 110 (6th Cir.); *Aron* v. *United States,* 382 F.2d 965, 972, 973 (8th Cir.); *Seymour* v. *United States,* 369 F.2d 825 (10th Cir.); *Porter* v. *United States,* 335 F.2d 602, 604, 607 (9th Cir.); *United States* v. *Eisner,* 297 F.2d 595, 597 (6th Cir.), cert. denied, 369 U.S. 859, 82 S. Ct. 947, 8 L. Ed. 2d 17; *Johnson* v. *United States,* 293 F.2d 539, 540 (D.C. Cir.), cert. denied, 375 U.S. 888, 84 S. Ct. 167, 11 L. Ed. 2d 118; *Bryant* v. *United States,* 252 F.2d 746, 749 (5th Cir.); *United States* v. *Old Dominion Warehouse, Inc.,* 10 F.2d 736 (2d Cir.).

## III

In response to a motion by the defendant to suppress the seized marijuana because the manner of search was too devastating, the trial court ruled that while the search was thorough and somewhat abrasive, it did not go beyond the scope of a proper search in looking for dynamite and concluded that the search of the defendant's apartment was not conducted in an unreasonable manner. The defendant assigns error to this ruling and conclusion and in his brief on his appeal to this court argues that a general exploratory search occurred as evidenced by the indiscriminate seizure of unoffending items. The police officers had knowledge of facts indicating the defendant's probable guilt of serious crimes for which the warrant was issued and the record fails to show that the police entered the premises for the purpose of conducting a general exploratory search for merely evidentiary materials tending to connect the defendant with some crime. Cf. *Harris* v. *United States,* 331 U.S. 145, 153, 67 S. Ct. 1098, 91 L. Ed. 1339.

The fourth amendment, which protects against all general searches, is to be liberally construed; *Go-Bart Importing Co.* v. *United States,* 282 U.S. 344, 357, 51 S. Ct. 153, 75 L. Ed. 374, *Byars* v. *United States,* 273 U.S. 28, 32, 47 S. Ct. 248, 71 L. Ed. 520; and a violation is enforceable against the states by the due process clause of the fourteenth amendment. *Mapp* v. *Ohio,* 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081; *Weeks* v. *United States,* 232 U.S. 383, 398, 34 S. Ct. 341, 58 L. Ed. 652; *State* v. *DelVecchio,* 149 Conn. 567, 572, 182 A.2d 402. An unreasonably conducted search, although otherwise legal, would violate constitutional provisions so that evidence seized as a result of it would be inadmissible. *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253; see *State* v. *Miller,* 152 Conn. 343, 347, 206 A.2d 835; *State* v. *DelVecchio,* supra. The test of reasonableness by which the constitutional permissibility of a search and seizure is determinable cannot be stated in rigid and absolute terms. *United States* v. *Rabinowitz,* 339 U.S. 56, 63, 70 S. Ct. 430, 94 L. Ed. 653; *Go-Bart Importing Co.* v. *United States,* supra. Each case must be decided by the trial court according to its facts and circumstances. *Berger* v. *United States,* 388 U.S. 41, 53, 69 S. Ct. 1873, 18 L. Ed. 2d 1040; *Ker* v. *California,* 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726; *State* v. *Purvis,* 157 Conn. 198, 204–5, 251 A.2d 178, cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246; *State* v. *Williams,* 157 Conn. 114, 118, 249 A.2d 245; *State* v. *Mariano,* 152 Conn. 85, 93, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962. In the case at bar the trial court heard testimony from Sergeant O'Connor concerning the conduct of the search; heard contradictory testimony from the defendant's sister; and the defendant testified as to the condition

of his apartment when he left it in the morning. The defendant, relying on *United States* v. *Lefkowitz*, 285 U.S. 452, 52 S. Ct. 420, 76 L. Ed. 877, claims that a general exploratory search occurred as evidenced by the seizure of unoffending items. In the *Lefkowitz* case, supra, 464, however, the court was dealing with a search for and seizure of books, papers, letters and other items to see if they contained any evidence of the respondent's guilt and the search was ruled exploratory because it was made solely to find evidence of guilt. In this case the defendant had been arrested earlier in the day and the officers were not searching for evidence of his guilt but rather were looking for dynamite. In *Warden* v. *Hayden,* 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782, an officer in the course of searching the defendant's house for weapons or money looked in a washing machine and found some clothes fitting the description of those worn by the suspect. The court, in upholding the seizure of the clothing, stated (p. 299) that it could not be said that an officer who found clothes in the washing machine was not searching for a weapon. Similarly, it cannot be said that an officer who found marijuana in the refrigerator was not searching for dynamite. In the *Lefkowitz* case, supra, 465–66, the court distinguished searches of one's house merely to get evidence to convict him of crime from searches whose purpose is to find stolen goods or to seize articles in order to prevent the commission of a crime. The search in the case at bar, under the authority of the warrant, in the light of the evidence, could have been found to have been directed in good faith toward the objects specified in the warrant. The conclusion of the trial court that the search was not unreasonable is fully supported by the record. The conduct of the search

here was less intensive than the exhaustive quests in the *Harris* and *Rabinowitz* cases and did not constitute an illegal mass seizure, as in *Kremen* v. *United States,* 353 U.S. 346, 77 S. Ct. 828, 1 L. Ed. 2d 876. The question of the credibility of the witnesses was for the trial court to determine. *Logan* v. *Lenhart,* 158 Conn. 611, 612, 259 A.2d 643. The testimony of Sergeant O'Connor showed that a general search was not conducted but that the police at all times, even after the discovery of the marijuana, endeavored to locate the dynamite and the type of box in which their informant said it had been placed. The crime charged was conspiracy and the nature of the objects sought justified rigorous police action. For cases involving dynamite and explosives as the objects of searches see *United States* v. *Melville,* 309 F. Sup. 829, 832 (S.D. N.Y.), in which the court stated: "Police action in respect to the apprehension that explosives and explosive devices exist or have been set for detonation, cannot be judged in the calm of later philosophical review of what a phlegmatic analysis shows. Their action is to be considered in the light of practical human behavior in dealing with unknowns." *People* v. *Superior Court,* 6 Cal. App. 2d 379, 382, 85 Cal. Rptr. 803; cf. *Palmer* v. *United States,* 203 F.2d 66, 68 (D.C. Cir.), 92 U.S. App. D.C. 103.

The search was consistent with a thorough investigation and was not a subterfuge directed toward uncovering evidence of another crime; it was conducted without unnecessary severity and intensity in the course of a search under lawful authority; and it was not unreasonable under all the circumstances involved. Cf. *State* v. *Collins,* 150 Conn. 488, 492, 191 A.2d 253; 47 Am. Jur., Searches and Seizures, § 41; 79 C.J.S., Searches and Seizures, § 83 (f).

## IV

The affidavit and application for a search warrant recited, inter alia, that a reliable informant stated that he had been in the defendant's apartment, the latest visit in the early morning hours of December 23, 1967, and had observed a wooden box containing sticks of dynamite wrapped in a plastic bag; that the defendant was arrested at the New Haven Motor Inn with four others, "all being charged with Section 54-197 of the Connecticut General Statutes," when forty-three sticks of dynamite were seized in the hotel room; that after the arrest the reliable informant, when again contacted, stated the box he had observed earlier in the defendant's room contained approximately 100 sticks of dynamite; and that the defendant stated to an undercover police agent that he "was in control of more dynamite, which he could deliver to the undercover agent." The defendant denied knowing that the glassine bags were in his refrigerator. The defendant assigns error in the ruling of the trial court that Sergeant O'Connor, a witness called to testify for the state, was not required, on cross-examination by the defendant, to disclose the informer's identity.

The general rule is that the prosecution may withhold the identity of an informer from an accused on the ground of privilege and the court is under no absolute duty either under the due process clause of the fourteenth amendment or under the sixth amendment to disclose an informer's identity where there is evidence that the informer was known to the officers to be reliable and that they made an arrest in good faith on the information the informant supplied. *McCray* v. *Illinois,* 386 U.S. 300, 305–14, 87 S. Ct. 1056, 18 L. Ed. 2d 62, rehearing denied, 386

U.S. 1042, 87 S. Ct. 1474, 18 L. Ed. 2d 616; 58 Am. Jur., Witnesses, § 534; 21 Am. Jur. 2d, Criminal Law, § 332; 97 C.J.S., Witnesses, § 264; note, 76 A.L.R.2d 262. The purpose of the government's privilege to withhold the identity of the informer is "the furtherance and protection of the public interest in effective law enforcement," but where disclosure of an informer's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way"; no fixed rule can be formulated as to when disclosure is required so that each case must be decided on its own facts; and "[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Rovario* v. *United States,* 353 U.S. 53, 59–62, 77 S. Ct. 623, 1 L. Ed. 2d 639.

The function of the informer in the case at bar was confined solely to furnishing the major portion of the information on probable cause for a warrant to search the defendant's apartment for items unrelated to the offense for which the defendant was tried in this case. In the *Rovario* case, the informer's identity was required to be disclosed because he was the sole participant with the accused in the transaction charged, and the only witness in a position to amplify or contradict the testimony of the government's witnesses. See also *Portomene* v. *United States,* 221 F.2d 582, 583–84 (5th Cir.); *United States* v. *Conforti,* 200 F.2d 365, 367–68 (7th Cir.); *Sorrentino* v. *United States,* 163 F.2d 627, 628–29 (9th Cir.). In the case at bar, in contrast to the *Rovario* case, there is no suggestion that the informer participated in the crime with which the defendant is charged. The informer merely gave information to the police on two occasions that he saw

100 sticks of dynamite in the defendant's apartment. No mention was made in the application for the search warrant of the presence of narcotics. When the evidence discloses that the informer was merely an informer and nothing more the government is not compelled to disclose his identity. *United States* v. *Mendoza,* 433 F.2d 891, 894 (5th Cir.); *Miller* v. *United States,* 273 F.2d 279, 281 (5th Cir.); see *United States* v. *Fisher,* 440 F.2d 654, 656 (4th Cir.).

In *State* v. *Harris,* 159 Conn. 521, 271 A.2d 74, cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630, the defendant sought to compel the state to disclose the identity of an informer who had advised the police that there were narcotics at the defendant's home. As in the case at bar, only surmise and conjecture were suggested by the defendant as to how the informer could supply information which would be beneficial to the defendant's case. There is nothing in the record before us to show that the informant participated in or had knowledge of the crime charged. In *State* v. *Harris,* supra, we held (p. 530) that under the circumstances there was no abuse of discretion either in the court's refusal to compel the disclosure of the informant's identity or in excluding testimony as to that identity. Similarly, we conclude in this case that the trial court did not abuse its discretion in ruling as it did in this regard.

## V

Finally, the defendant assigned error in the refusal of the court to sustain his objection to the introduction in evidence of the marijuana "allegedly seized in this case" because, he argues, the state did not prove beyond a reasonable doubt that the exhibits identified as marijuana were the same items seized,

transported to and examined at the state toxicological laboratory or that the exhibits had not been tampered with prior to their introduction in evidence. The gravamen of the defendant's position in this regard centers on a twofold attack on the admission of these items because, as he now argues in his brief, "not all the individuals having access to the exhibits were called and the exhibits were not sealed or labelled in such a way as to avoid the possibility of tampering or misplacement of any items seized in the Johnson apartment."

There was a plethora of evidence introduced in connection with the train of events which transpired from the time the glassine bags were seized up until the point at which they were offered in evidence at the trial. Sergeant O'Connor on December 23, 1967, put the three glassine bags he found at the defendant's apartment in his pocket and when he arrived at police headquarters he placed them in a shoe box on the sides of which he stuck Scotch tape and on the top of which he marked its contents. Then he put the box in a safe to which only he and Detective McCormick had access. Thereafter the box was not opened and was only removed from the safe by Sergeant O'Connor when he handed it with the Scotch tape on it to Detective Buffaloe on December 26, 1967, for delivery to the state toxicological laboratory in Hartford. At that time, Detective Buffaloe delivered the box to Miss Carlson, secretary to Dr. Stolman, chief toxicologist, who was authorized to receive such material for him. The box was never out of Miss Carlson's sight or presence until it was given to Dr. Stolman. Miss Carlson opened the box and examined the contents in the presence of Detective Buffaloe and gave him a receipt for the box and the three plastic bags.

A receipt is given for an item delivered and received at the laboratory and a carbon copy is retained by it. The number, the police department involved and the date and the time of the delivery are listed in a ledger. Such items received by the laboratory are kept in a locked cabinet to which Dr. Stolman, two other toxicologists and Miss Carlson have keys. The locked cabinet is located in a room, referred to as an evidence room, which was kept locked when not in use. Dr. Stolman was on duty at the laboratory on December 26, 1967, and on that day he received and examined the shoe box and glassine bags, brought by Detective Buffaloe. The number 67,4934 was in red ink on the shoe box and in black letters on each of the three glassine bags; they were placed there by Miss Carlson at Dr. Stolman's direction. The red crayon mark of "1" on one of the glassine bags, the red crayon mark of "2" on one of the glassine bags and the red crayon mark of "3" on one of the glassine bags were made by Dr. Stolman after he had made his chemical analysis of the respective bag's contents. Sergeant O'Connor and Detective Buffaloe had no difficulty in identifying the shoe box or the three glassine bags as the items seized or the items delivered to the toxicological laboratory and in the condition as previously seen by them except for the laboratory markings.

Basically, in a criminal prosecution, the state has the burden of proving the case set forth in the information in all its material parts beyond a reasonable doubt, so that the court must find, in order to convict, that all the elements of the crime charged have been established beyond a reasonable doubt. *Lego* v. *Twomey*, 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618; *State* v. *Gallivan*, 75 Conn. 326, 329, 53 A. 731. The trier must consider, however, the whole evidence,

taken together, and is not bound to dissect it into unconnected fragments for a separate microscopic examination of each, regardless of its relation to the rest. *State* v. *Gallivan*, supra; see *State* v. *Olavieri*, 123 Conn. 678, 679–80, 195 A. 181.

As a general rule, it may be said that the prosecution is not required or compelled to prove each and every circumstance in the chain of custody beyond a reasonable doubt; the reasonable doubt must be to the whole evidence and not to a particular fact in the case. *United States* v. *Hall*, 198 F.2d 726, 730–31 (2d Cir.); 30 Am. Jur. 2d, Evidence, § 1172; 53 Am. Jur, Trial, § 771. An object connected with the commission of a crime, however, must be shown to be in substantially the same condition as when the crime was committed before it can be properly admitted in evidence. *United States* v. *Clark*, 425 F.2d 827, 833 (3d Cir.); *United States* v. *Gallego*, 276 F.2d 914, 917 (9th Cir.); *United States* v. *S. B. Penick & Co.*, 136 F.2d 413, 415 (2d Cir.); 32 C.J.S., Evidence, § 607.

There is no hard and fast rule that the prosecution must exclude or disprove all possibility that the article or substance has been tampered with; in each case the trial court must satisfy itself in reasonable probability that the substance had not been changed in important respects. *United States* v. *S. B. Penick & Co.*, supra. The trial court must also decide under the same test of reasonable probability whether the identification and nature of contents is sufficient to warrant its reception in evidence. *United States* v. *Clark*, supra; *United States* v. *Gallego*, supra; *United States* v. *S. B. Penick & Co.*, supra. The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers

tampering with it in making its determination; and there is no rule which requires the state to produce as witnesses all persons who were in a position to come into contact with the substance sought to be introduced in evidence. *United States* v. *Gallego,* supra. The ruling of the trial judge may not be overturned except for a clear abuse of discretion. *United States* v. *Von Roeder,* 435 F.2d 1004, 1008 (10th Cir.); *United States* v. *Clark,* supra; *United States* v. *Gallego,* supra. In the case at bar there was no affirmative showing that the three glassine bags in the shoe box were tampered with, or that there was insufficient proof as to the identification and nature of the contents of the three bags that were seized, so that it cannot be said that the trial judge clearly abused his discretion in admitting the three bags in evidence. See *United States* v. *Von Roeder,* supra.

There is no error.

In this opinion the other judges concurred.