STATE OF CONNECTICUT *v.* SYLVESTER BROWN

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued February 2—decided May 3, 1972

*John R. Williams,* for the appellant (defendant).

*Jerrold H. Barnett,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

LOISELLE, J. The defendant Sylvester Brown was convicted in a jury trial of a sale of narcotics in violation of § 19-480 (a) of the General Statutes. The defendant's motion to set aside the verdict was denied by the trial court and from the judgment rendered thereon he has appealed.

The defendant's assignments of error relate to attacks on the finding, on the admission of evidence and on the charge to the jury. In order to consider these claims, a summary of the offers of proof presented by the state and by the defendant is necessary.

The state's offers of proof include the following: On January 20, 1970, Detective Francis R. DeGrand of the New Haven police department was engaged

in an undercover operation with Officers Frank Hawley and James Lucas. On that day, Officer Hawley drove Detective DeGrand, in a Volkswagen truck equipped with one-way glass windows, to a store on Congress Avenue in the city of New Haven. Officer Hawley went into the store and spoke with Officer Lucas, while Detective DeGrand remained in the rear of the truck where, approximately six feet away from Hawley and the defendant, he was making observations through the one-way glass window on the side of the truck. Officer Hawley then went out to the sidewalk in front of the store, where Detective DeGrand observed the defendant speaking to Officer Hawley, handing him something, and receiving money from him. Officer Hawley then walked over to the Volkswagen truck and turned over two bundles of glassine bags to Detective DeGrand. Detective DeGrand put the bags into a police evidence envelope which he closed with clips. He then marked and signed it. He gave that envelope to his superior, Lieutenant John M. Maher, who locked it in his desk. Lieutenant Maher kept his desk locked and had the only key to it. The following day Detective DeGrand took the envelope from Lieutenant Maher and delivered it to the office of Abraham Stolman at the state toxicological laboratory and obtained a receipt for it from Stolman's secretary. A few hours later, Stolman marked the envelope with an identification number and locked it in a cabinet where it remained for several months until it was tested. Stolman's report indicated that samples taken from the bags contained heroin. Following the tests, Stolman sealed the envelope. The envelope was not reopened until the time of the trial.

The defendant's offers of proof which are relevant

to his claims of error are the following: Detective DeGrand did not see anything pass from the defendant to Officer Hawley and the defendant did not sell heroin to Officer Hawley. The evidence envelope in which Detective DeGrand put the thirty glassine bags was never sealed until after their contents were tested. The envelope was kept in a cabinet, at the state toxicological laboratory, in which narcotics from various sources were kept and to which three people had access.

The defendant claims that the trial court erred in the following respects: (1) In finding facts which are unsupported by the evidence; (2) in admitting in evidence thirty glassine bags and testimony as to their contents; (3) in refusing a request to charge on the state's failure to call certain witnesses; (4) in refusing the defendant's request for an instruction that possession of heroin is a lesser offense than, and included in, the offense of the sale of heroin; and (5) in refusing to charge that the state had the burden of showing the defendant's lack of a license to sell drugs. The remaining assignments were not briefed and are considered abandoned. *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 184, 286 A.2d 299; *Martin* v. *Kavanewsky,* 157 Conn. 514, 516, 255 A.2d 619.

The defendant's first claim is that certain of the court's findings, as specified in his assignments of error, are unsupported by the evidence. That claim is tested by reference to the evidence printed in the appendices to the briefs. Practice Book §§ 627, 718; see *Grodzicki* v. *Grodzicki,* 154 Conn. 456, 460, 226 A.2d 656; *State* v. *Vars,* 154 Conn. 255, 258, 224 A.2d 744. The defendant attacks the court's finding that the state offered evidence to prove the date on which the contents of the thirty bags were removed from

a locked cabinet in the state toxicological laboratory for testing. The attack is without merit. In fact, the evidence offered by the defendant confirms the state's offer of proof. The defendant also attacks two points in the court's narratives of the evidence on which evidentiary rulings were made. See Practice Book § 648. These attacked items are of no significance to the rulings. Assuming, arguendo, that it would be appropriate to strike these items of the narrative, the evidentiary rulings would not be affected. See *Fairbanks* v. *State,* 143 Conn. 653, 655, 124 A.2d 893; *Trani* v. *Anchor Hocking Glass Corporation,* 142 Conn. 541, 543, 116 A.2d 167.

The state offered in evidence thirty bags of white powder and the testimony of the chief state toxicologist that the white powder contained heroin. The defendant claims, in substance, by a number of his assignments of error, that the court erred in admitting this evidence because the state did not establish that the bags were the same bags which Officer Hawley gave to Detective DeGrand. The defendant argues that a break in the "chain of custody" occurred while the bags were (1) in Lieutenant Maher's desk; (2) with Stolman's secretary; and (3) in Stolman's locked cabinet for several months, where they were available to persons who did not testify. We recently had occasion to consider claims of the same character as those raised by the defendant. In *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903, the defendant objected to the admission in evidence of marijuana. There, as here, the gravamen of the defendant's position was that not all individuals having access to the offered evidence were called as witnesses and that there was a possibility that someone may have tampered with it. What we said in the *Johnson* case

is applicable here: "There is no hard and fast rule that the prosecution must exclude or disprove all possibility that the article or substance has been tampered with; in each case the trial court must satisfy itself in reasonable probability that the substance had not been changed in important respects. *United States* v. *S. B. Penick & Co.,* . . . [136 F.2d 413, 415 (2d Cir.)]. The trial court must also decide under the same test of reasonable probability whether the identification and nature of contents is sufficient to warrant its reception in evidence. *United States* v. *Clark,* . . . [425 F.2d 827, 833 (3d Cir.)]; *United States* v. *Gallego,* . . . [276 F.2d 914, 917 (9th Cir.)]; *United States* v. *S. B. Penick & Co.,* supra. The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it in making its determination; and there is no rule which requires the state to produce as witnesses all persons who were in a position to come into contact with the substance sought to be introduced in evidence. *United States* v. *Gallego,* supra. The ruling of the trial judge may not be overturned except for a clear abuse of discretion. *United States* v. *Von Roeder,* 435 F.2d 1004, 1008 (10th Cir.); *United States* v. *Clark,* supra; *United States* v. *Gallego,* supra. In the case at bar there was no affirmative showing that the . . . glassine bags . . . were tampered with, or that there was insufficient proof as to the identification and nature of the contents of the . . . bags that were seized, so that it cannot be said that the trial judge clearly abused his discretion in admitting the . . . bags in evidence. See *United States* v. *Von Roeder,* supra." The court was not in error in admitting the thirty bags of heroin, or testimony about them, in evidence.

The defendant requested an instruction to the jury that a party's failure to call an available material witness permits an inference that the witness' testimony would be harmful to that party. In the defendant's view, Officer Lucas, Lieutenant Maher, Stolman's secretary and another employee at the state toxicological laboratory, who had access to the cabinet in which the thirty bags were kept, were such material witnesses. It is not every available material witness who may be the basis of the inference, but only those "whom the party would naturally produce." *Queen* v. *Gagliola,* 162 Conn. 164, 168, 292 A.2d 890. "A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce." *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598. That materiality and naturalness of production are not the same is apparent. McCormick, Evidence §§ 152, 249; 2 Wigmore, Evidence (3d Ed.) §§ 285–290. One would not be expected to produce a witness who could add nothing that had not already been reasonably shown, even though merely repetitious testimony could be material. Such evidence could hardly be considered "peculiar or superior." 2 Wigmore, op. cit. § 287. Moreover, the claims of proof in the finding do not support a conclusion that the trial court erroneously refused to charge on the inference. Practice Book § 635; *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 451, 254 A.2d 907. "The party claiming the benefit of the rule on the adverse inference must show that he is entitled to it." *Queen* v. *Gagliola,* supra, 169. The only refer-

ence to Officer Lucas in the state's claims of proof relative to the day of the sale was that "upon arriving at 719 Congress Avenue Officer Hawley left the truck, entered the variety store, had a short conversation with Officer Lucas inside the store and then came out of the store and stood on the sidewalk." The only mention of Lucas in the defendant's claims of proof was that Detective DeGrand did not select Officer Lucas for undercover operations; Detective DeGrand knew that others, in addition to Officers Hawley and Lucas, had volunteered for undercover operations; Officer Lucas was not a police officer when he volunteered; and Presoleon Bell operated the Horseshoe Restaurant across from 719 Congress Avenue and played numbers with Officers Hawley and Lucas "just about every day." There is nothing in the finding to show that Officer Lucas observed or knew anything about the transaction between the defendant and Officer Hawley, as witnessed by Detective DeGrand, which would either have corroborated or rebutted Detective DeGrand's testimony. The defendant's argument that it was possible that Officer Lucas handed Officer Hawley the heroin before Hawley went out of the store is no more than a speculative assertion. Without more, it certainly does not show that the defendant was entitled to an adverse-inference charge. An examination of the claims of proof in no way suggests that Officer Lucas possessed any information peculiar or superior to that already introduced by Detective DeGrand. It is even less likely that the state would call every person who had access to the thirty glassine bags which the state introduced in evidence. As we have already indicated, such evidence is unnecessary so long as the requirements outlined in *State* v. *Johnson,* 162 Conn. 215, 232, 292 A.2d 903, are met.

Further, the request, as indicated above, did not correctly state the law and was, therefore, properly refused. *State* v. *Vennard,* 159 Conn. 385, 399, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625.

The defendant assigns error in the trial court's refusal to charge that possession of a narcotic drug is a "lesser included offense" in the offense of the sale of a narcotic drug in violation of § 19-480 (a) of the General Statutes. Courts have taken three approaches in determining whether a crime is a "lesser included crime" when the evidence would support a conclusion that the lesser crime was committed: (1) The included crime may be one consisting solely of elements which must always be present for the greater crime to have been committed; (2) it may be one consisting solely of elements which must have been present for the greater offense to have been committed in the manner described by the information or bill of particulars thereto; (3) or it may be a crime which the evidence suggests and which could have been included in the information. The Connecticut rule on this question follows the second course and is well stated in *State* v. *Monte,* 131 Conn. 134, 135, 38 A.2d 434: "[I]f upon the evidence an accused can properly be found guilty of a lesser offense than that charged and the allegations of the information include the elements constituting the lesser offense, he is entitled to have the jury instructed as to" the lesser offense.[1] In

---

[1] See *United States* v. *Sinclair,* 444 F.2d 888, 889 (D.C. Cir.); *Virgin Islands* v. *Carmone,* 422 F.2d 95, 100 (3d Cir.); *Olais-Castro* v. *United States,* 416 F.2d 1155, 1157 (9th Cir.); *Walser* v. *United States,* 344 F.2d 795, 798 (1st Cir.); *People* v. *St. Martin,* 1 Cal. 3d 524, 463 P.2d 390; *State* v. *Anderson,* 82 Idaho 293, 352 P.2d 972; *State* v. *Jones,* 186 Neb. 303, 183 N.W.2d 235; 8 Moore, Federal Practice, ¶ 31.03; 4 Wharton, Criminal Law and Procedure

the case at bar, the information charging the defendant in the first count with the sale of a narcotic drug does not include the elements of the crime of possession of a narcotic drug. The defendant was not, therefore, entitled to a charge on the crime of possession—regardless of the evidence presented at his trial.[2] In *State* v. *Mele,* 140 Conn. 398, 100 A.2d 570, we stated that where a short form information was used by the state, the so-called "evidence test" was to be used to inform an accused whether a lesser crime was included in the crime charged. The practice in our courts in criminal cases is now more liberal in matters of disclosure and discovery so that the reason for employing the evidence test no longer exists. Under our present practice and even when a short form information is used there is no occasion for a defendant not to be fully apprised of the specific offense with which he is charged, the elements of that offense and the mode and manner in which it is charged that the offense was committed. With such disclosures, an information may be made more particular and, therefore, there is no occasion for a defendant not to be apprised of the possible lesser included crimes.

The test for determining whether one violation is a lesser included offense in another violation is

§§ 1799, 1888; Model Penal Code, Tentative Draft No. 5 (1956), comment § 1.08; National Commission on Reform of Federal Criminal Laws, Study Draft of a New Federal Criminal Code (1970) § 703. For other limitations on the doctrine of lesser included offenses, see *Sansone* v. *United States,* 380 U.S. 343, 85 S. Ct. 1004, 13 L. Ed. 2d 882; *Bera* v. *United States,* 351 U.S. 131, 76 S. Ct. 685, 100 L. Ed. 1013.

[2] A corequisite of a lesser-included-offense charge, however, is that there be a rational basis for an acquittal on the offense charged and a conviction on the included offense. *State* v. *Pallanck,* 146 Conn. 527, 530, 152 A.2d 633; see 23A C.J.S., Criminal Law, § 1298; Model Penal Code, Tentative Draft No. 5 (1956), comment § 1.08.

whether it is possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser. If it is possible, then the lesser violation is not an included crime. See *United States* v. *McCue,* 160 F. Sup. 595, 599 (D. Conn.). In other words, to require an instruction on a lesser included offense, the lesser offense must not require any element which is not needed to commit the greater offense in the manner alleged in the information or the bill of particulars. See *Waker* v. *United States,* 344 F.2d 795, 798 (1st Cir.). Limiting the scope of the doctrine in this way obviates any necessity for charging on every offense that the evidence suggests the defendant may have committed in the course of the crime charged—even though it has nothing to do with the crime charged.

In this case there is no question that the allegation of the sale offense in the information does not include the elements of a possession violation. General Statutes § 19-443 (33) defines "sale" as used in § 19-480 (a): " '[S]ale' includes barter, exchange or gift, or offer therefor." Even in the more general usage of the term, there is no requirement that one be in possession of goods or have control over them in order to sell them. General Statutes §§ 42a-2-106, 42a-2-401 (2), governing commercial transactions; 46 Am. Jur., Sales, § 24. On a similar question, the court in *Williams* v. *United States,* 292 F.2d 157, 158 (8th Cir.), said: "Manifestly, a transportation of narcotic drugs involves elements of proof which are not essential in establishing a sale, and vice versa, so that no question can exist as to their capacity to constitute distinct offenses under the narcotics control statutes." In several cases, physicians have been convicted of the "sale" of nar-

cotic drugs merely for improperly issuing a prescription for a drug which was subsequently filled by a druggist. See *United States* v. *Brandenburg,* 155 F.2d 110, 111 (3d Cir.), cert. denied, 332 U.S. 769, 68 S. Ct. 80, 92 L. Ed. 354; *United States* v. *Hipsch,* 34 F. Sup. 270, 274 (W.D. Mo.). Similar conclusions have been reached in other cases: *Waker* v. *United States,* supra, where the court held the crime of unlawful acquisition or possession of marijuana as not necessarily included in the offense of illegally transferring marijuana; and *Kelly* v. *United States,* 370 F.2d 227 (D.C. Cir.), cert. denied, 388 U.S. 913, 87 S. Ct. 2127, 18 L. Ed. 2d 1355, where the court held that illegally possessing narcotics was not necessarily included in the crime of facilitating the sale of narcotics. The court was not in error in refusing to charge that possession of heroin was a lesser included offense of the sale of heroin as charged.

The final claim of error is that the court erred in omitting to charge the jury that the state had the burden of proving the defendant did not have a license to deal in drugs. A license would exempt the defendant from the crime with which he is charged.

The defendant was charged with violation of § 19-480 (a) of the General Statutes which penalizes the sale of narcotic drugs except as authorized by chapter 359. Section 19-474 of chapter 359 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant." There is no question that this statute is constitutionally sound. This precise language, adopted from

the Uniform Narcotic Drug Act, as well as language with a similar effect, has been repeatedly held to be consistent with the constitutional mandate of due process of law.[3]

It is fundamental to our jurisprudence that one accused of crime enjoys a presumption of innocence until the state has proven his guilt beyond a reasonable doubt. *State* v. *Hernandez,* 154 Conn. 698, 229 A.2d 30. This means proof which "precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclusion." *State* v. *Smith,* 138 Conn. 196, 200, 82 A.2d 816. As a part of its duty to prove guilt beyond a reasonable doubt, the state must establish each essential element of the crime charged. *State* v. *Benson,* 153 Conn. 209, 215, 214 A.2d 903. General Statutes § 19-474 is absolutely consistent with that duty and completely separate from it. *Leland* v. *Oregon,* 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302, rehearing denied, 344 U.S. 848, 73 S. Ct. 4, 97 L. Ed.

---

[3] See *United States* v. *Gainey,* 380 U.S. 63, 70, 85 S. Ct. 754, 13 L. Ed. 2d 658; *Casey* v. *United States,* 276 U.S. 413, 418, 48 S. Ct. 373, 72 L. Ed. 632; *Yee Hem* v. *United States,* 268 U.S. 178, 183-85, 45 S. Ct. 470, 69 L. Ed. 904; *McKelvey* v. *United States,* 260 U.S. 353, 356, 43 S. Ct. 132, 67 L. Ed. 301; *Smith* v. *United States,* 269 F.2d 217, 218 (D.C. Cir.), cert. denied, 361 U.S. 865, 80 S. Ct. 130, 4 L. Ed. 2d 108; *United States* v. *Holmes,* 187 F.2d 222, 224 (7th Cir.), cert. denied, 341 U.S. 948, 71 S. Ct. 1015, 95 L. Ed. 1372, rehearing denied, 342 U.S. 843, 72 S. Ct. 23, 96 L. Ed. 637; *7 Fifths Old Grand-Dad Whiskey* v. *United States,* 158 F.2d 34, 36 (10th Cir.), cert. denied, 330 U.S. 828, 67 S. Ct. 870, 91 L. Ed. 1277; *Wallace* v. *State,* 224 Ga. 255, 161 S.E.2d 288, cert. denied, 393 U.S. 1123, 89 S. Ct. 995, 22 L. Ed. 2d 130; *Stanley* v. *State,* 252 Ind. 37, 245 N.E.2d 149; *State* v. *Winters,* 16 Utah 2d 139, 396 P.2d 872; Model Penal Code, Tentative Draft No. 4 (1955), § 1.13 and comments. Our cases are in accord. *State* v. *Orsini,* 155 Conn. 367, 374, 232 A.2d 907; *State* v. *Nathan,* 138 Conn. 485, 489, 86 A.2d 322; *State* v. *McGee,* 88 Conn. 353, 359, 91 A. 270.

659.[4]  The *Leland* case establishes that, so long as the state sustains its burden of establishing each element of the crime beyond a reasonable doubt, the defendant suffers no unconstitutional handicap by a requirement that he introduce evidence on some point, even an element of the crime.  The possibility that § 19-474 is constitutionally infirm in the other respects which the defendant asserts, i.e., based on an impermissible inference and infringing on an accused's right to remain silent, has been dispelled by *Turner* v. *United States,* 396 U.S. 398, 408 n.8, 411 n.13, 418, 421, 90 S. Ct. 642, 24 L. Ed. 2d 610, rehearing denied, 397 U.S. 958, 90 S. Ct. 939, 25 L. Ed. 2d 144.  Compare *United States* v. *Gainey,* 380 U.S. 63, 85 S. Ct. 754, 13 L. Ed. 2d 658 (Black, J., dissenting).

Section 19-474 removes from the state the obligation to come forward with evidence on the defendant's lack of a license in the first instance—but it does not alter its duty to prove a lack of authorization to deal in narcotic drugs when the question of license becomes an issue in the case.[5]  In *State* v. *Belanger,* 148 Conn. 57, 63, 167 A.2d 245, for example, the court found that the defendant had not discharged his burden on the claim that he lawfully possessed drugs prescribed by a physician.  The court noted that prescribed drugs could be lawfully

---

[4] See Chief Judge Bazelon's concurring opinion in *United States* v. *Eichberg,* 439 F.2d 620, 623–24 (D.C. Cir.), where he discusses the *Leland* case in view of *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368.

[5] It is important to note the distinction between the two senses in which the term "burden of proof" is ordinarily used.  It is a general term which refers to two separate and different burdens:  (1) the risk of not persuading the trier of fact, or the burden of persuasion; and (2) the risk of not producing evidence, or the burden of going forward.  McCormick, Evidence, pp. 635, 638; 9 Wigmore, Evidence (3d Ed.) §§ 2485, 2487.

held only in the container in which they were de-
livered and that there was no proof that the defend-
ant so held them. See *State* v. *Perkins,* 146 Conn.
518, 522, 152 A.2d 627, to the same effect. Authoriza-
tion to sell drugs is, in this case, a fact "inconsistent
with guilt," whether it be denominated an exception,
affirmative defense or otherwise. *State* v. *Schweit-
zer,* 57 Conn. 532, 541, 18 A. 787. On occasion we
have stated that such facts must be proved by the
defendant by a fair preponderance of the evidence.
*State* v. *Whiteside,* 148 Conn. 208, 212, 169 A.2d 260,
cert. denied, 368 U.S. 830, 82 S. Ct. 52, 7 L. Ed. 2d
33; *State* v. *Schweitzer,* supra. In all of these cases,
however, the ultimate burden was held to be on
the state to prove the commission of each element
of the crime charged beyond a reasonable doubt.
Consequently, no matter how the defendant's burden
of coming forward with evidence to the threshold
required in particular cases is described, he may
logically be asked to do no more than prove his de-
fense to a point where, on the whole evidence, the
state has failed to prove the elements in question
beyond a reasonable doubt. *State* v. *Brauneis,* 84
Conn. 222, 231, 79 A. 70. To hold otherwise would be
to excuse the state from its burden—and its proof—
on a necessary element of the crime. The state has
a right, in the first instance, to rely on § 19-474 that
"it shall not be necessary to negative any excuse,
proviso or exemption contained in" the section, the
violation of which is charged in the information, and
thereupon it becomes the privilege of the accused to
offer such evidence as he desires as to any excuse,
proviso or exemption, the benefit of which he claims.
As soon as substantial evidence tending to prove his

claim comes into the case, General Statutes § 19-474 loses all operative effect. The state may then rebut this evidence if it desires or submit the issue to the court on the evidence offered. It is for the court to determine whether a matter covered by § 19-474 has been put in issue. If the issue has been raised, the burden rests on the state, as it does in all other essential elements in the case, to prove beyond a reasonable doubt that the accused was not entitled to the benefit of any excuse, proviso or exemption claimed by him. See *State* v. *Vennard,* 159 Conn. 385, 403, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625; *State* v. *Davis,* 158 Conn. 341, 355, 260 A.2d 587; *State* v. *Conte,* 157 Conn. 209, 212, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 438. In this case, the evidence was silent on the issue of license. Under these circumstances, the court did not err in omitting a charge to the jury on that matter.

Of course, the provisions of § 19-474 would not be constitutionally sound if the statute operated in any situation in which it caused the defendant any hardship; *Morrison* v. *California,* 291 U.S. 82, 88, 54 S. Ct. 281, 78 L. Ed. 644; in which an inference establishing an element of a crime—even in the first instance—was unreasonable; *Tot* v. *United States,* 319 U.S. 463, 470–72, 63 S. Ct. 1241, 87 L. Ed. 1519; or in which any specific constitutional right was otherwise abridged. *Bailey* v. *Alabama,* 219 U.S. 218, 239, 31 S. Ct. 145, 55 L. Ed. 191. No such situation exists here. See *United States* v. *Secondino,* 347 F.2d 725 (2d Cir.), cert. denied, sub nom. *Massari* v. *United States,* 382 U.S. 931, 86 S. Ct. 322, 15 L. Ed. 2d 342, rehearing denied, 382 U.S.

1002, 86 S. Ct. 572, 15 L. Ed. 2d 492; *Agobian* v. *United States,* 323 F.2d 693, 694 (9th Cir.), cert. denied, 375 U.S. 985, 84 S. Ct. 517, 11 L. Ed. 2d 472.

There is no error.

In this opinion the other judges concurred.